*In the matter of the Petition of* W. S. PRYOR *for a Writ of Habeas Corpus.*

CITY—*Regulating Price of Gas*—*Void Ordinance.* In 1886, Iola, a city of the third class, granted to the Iola Gas and Coal Company, its successors and assigns, the right to lay gas-pipes and mains in the streets and public grounds for the purpose of supplying the city and its inhabitants with gas. No rates were prescribed, except that the company should not charge the city more than $1 per 1,000 cubic feet of gas for lighting the public buildings. On September 12, 1889, the company, with the assent of the city, assigned all its rights and interests to W. S. Pryor and Joseph Paullin, their heirs and assigns, one of the conditions being that said assignees would furnish private families with gas at a price not exceeding $2.50 per stove per month, and 40 cents per month per burner for illuminating purposes; and for some years past said assignees have been furnishing natural gas to the city and its inhabitants. On May 10, 1895, the city enacted an ordinance providing, among other things, that it should be unlawful for any person, firm or corporation furnishing gas in said city to charge anything in excess of the prices therein fixed, which were very much lower than those named in the assignment, and lower than those collected from consumers: *Held,* That said ordinance is inoperative and void as to said Pryor and Paullin, their heirs and assigns, in so far as the same purports to establish prices for gas furnished by them to private consumers.

*Original Proceeding in Habeas Corpus.*

THE statement of the case, made by MARTIN, C. J., is as follows:

Iola is, and at all times hereinafter mentioned was, a city of the third class in Allen county. On July 1, 1886, an ordinance of said city, being No. 268, went into effect, purporting to grant to the Iola Gas and Coal Company, its successors and assigns, the right and privilege of laying and maintaining gas-pipes and mains in the streets, avenues, alleys, parks and public grounds of the city, for the purpose of supplying and conveying gas or other volatile substances for

manufacturing, heating, lighting, fuel, domestic, and other purposes. No rates were prescribed, except that the company should not charge the city more than $1 per 1,000 cubic feet of gas for lighting the public buildings. It was provided that the gas and coal company should file its written acceptance with the clerk within 10 days, after which said ordinance should become a contract between the city and said gas and coal company. Within the time limited the company duly filed its acceptance. It expended a considerable sum in sinking gas-wells, laying pipes, etc., but with indifferent success, the supply of natural gas not being adequate.

On September 12, 1889, the gas and coal company, with the assent of the city, assigned its rights and privileges under said ordinance to W. S. Pryor and Joseph Paullin upon certain terms and conditions, one of which was that said assignees should furnish private familes with gas at a rate not exceeding $2.50 per stove per month and 40 cents per month per burner for illuminating purposes. Pryor & Paullin proceeded to sink other wells and improve and extend the plant; and at length obtained an adequate supply of natural gas, which they have been furnishing to the city and its inhabitants at contract rates.

On May 10, 1895, ordinance No. 328 took effect by publication, the same purporting to authorize corporations, firms, companies, or individuals, to lay and maintain pipes in the streets, avenues, alleys, lawns and public grounds for the purpose of supplying said city and its inhabitants with natural gas for heating and illuminating purposes, and regulating the manner of laying such pipes, the kind and quality of same, and fixing the maximum rates to be charged the consumers of gas therefor, and providing penalties for the

violation of the provisions of the ordinance.   It was declared unlawful for any person to make collections for gas furnished without filing a written acceptance of the conditions of the ordinance, and the rates fixed for gas for the use of families were very much lower than those named in said assignment to Pryor & Paullin, and lower than they had been collecting from consumers.   Pryor & Paullin have never filed any written acceptance of the terms of the ordinance, and they have no competitor in the business as yet.

Complaint was made before the police judge that W. S. Pryor had collected from S. Bevington $1.50 for each of the months of June and July, 1895, for supplying a No. 8 cook-stove, in violation of said ordinance No 328, which allowed only $1 per month, and he was convicted and fined in the sum of $30 and $18 costs, and was ordered to be committed to the city prison until the fine and costs should be paid.   He claims that such imprisonment is unlawful, and asks to be discharged therefrom.

*C. E. Benton,* for petitioner ; *Campbell & Hawkins,* of counsel.

*H. A. Ewing,* for respondent :

The opinion of the court was delivered by

MARTIN, C. J. : The only question arising upon the record is whether the city of Iola had authority to fix the rates to be charged for natural gas furnished to private consumers by Pryor & Paullin under the circumstances above stated.   In this country, municipal corporations (except the city of Washington) are the creatures of the states in which they are located. They derive their powers from the constitution and

the statutes. In *Anderson v. City of Wellington*, 40 Kas. 176, this court has said :

" The power to pass a city ordinance must be vested in the governing body of the city by the legislature in express terms, or be necessarily or fairly implied in and incident to the powers expressly granted, and must be essential to the declared purposes of the corporation—not simply convenient, but indispensable. . . . Any fair and reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the power is denied." See, also, 1 Dillon, Mun. Corp. (4th ed.), § 89.

The act providing for the organization and government of cities of the third class contains no express grant of power to fix or regulate the prices of gas, water, or any other article of necessity or luxury. General authority is given to enact ordinances for the good government and welfare of the city (¶ ¶ 958, 991, Gen. Stat. of 1889), and such cities may provide for and regulate the lighting of streets, and they have power to make contracts with any person, company or association to erect gas-works with the privilege of furnishing gas to light the streets, lanes and alleys of the city for any length of time, not exceeding 21 years. (¶ 984, Gen. Stat. of 1889.)

The respondent relies principally upon a section of the corporation law of 1868 relating to gas and water corporations, and published as ¶ 1401, General Statutes of 1889, which reads as follows :

"Any gas or water corporation shall have full power to manufacture and sell, and to furnish such quantities of gas or water as may be required by the city, town or village where located, for public or private buildings, or for other purposes ; and such corporations shall have power to lay pipes, mains and conductors for conducting gas or water through the streets, lanes, alleys and squares in such city, town or village

with the consent of the municipal authorities thereof, and under such regulations as they may prescribe.''

Certainly there is no express power conferred upon the municipal authorities by this section to regulate the price of gas or water. Whether they might, as a condition of their consent, provide that gas or water should be furnished to the city or to its inhabitants at not exceeding certain prescribed rates, we need not now inquire. Consent was granted by ordinance No. 268 to the Iola Gas and Coal Company, its successors and assigns, without annexing any condition as to rates, except that no more than $1 per 1,000 cubic feet of gas should be charged for lighting the public buildings.

In certain cases the state may fix and regulate the prices of commodities and the compensation for services, but this is a sovereign power, which may not be delegated to cities or subordinate subdivisions of the state, except in express terms or by necessary implication. No such power is expressly conferred upon cities of the third class, and we do not think the right can be implied from any express provision, unless possibly that in the grant of consent to any person or corporation so to use the streets and public grounds of the city a condition might be imposed as to the maximum rates to be charged.

In *Gas Co. v. The State, ex rel.*, 135 Ind. 49, it was held that municipal corporations of Indiana have no power at common law to fix by ordinance the price at which natural gas shall be supplied to consumers, and that the act of March 7, 1887, providing ''that the boards of trustees of towns and the common council of cities . . . shall have power to provide by ordinance reasonable regulations for the safe supply, distribution and consumption of natural gas within

the respective limits of such towns and cities," does not confer the power to regulate the price at which natural gas shall be furnished ; overruling the case of *City of Rushville v. Gas Co.*, 132 Ind. 575. In the opinion the court says : "To secure the safe supply and use of natural gas is one thing, and to fix the price at which gas shall be supplied is another and a different thing."

In *City of St Louis v. Telephone Co.*, 96 Mo. 623, it was held that neither under its authority to regulate the use of streets, nor the power to license, tax and regulate various professions and businesses, nor the general welfare clause permitting the passage of all such ordinances not inconsistent with the provisions of the charter or the laws of the state as may be expedient in maintaining the peace, good government, health and welfare of the city, its trade, commerce, and manufactures, can the city of St. Louis regulate by ordinance the tariff of charges of a telephone company. In the opinion the court says :

"We are at a loss to see what this power to regulate the use of the streets has to do with the power to fix telephone charges. The power to regulate the charges for telephone service is neither included in nor incident to the power to regulate the use of streets, and the ordinance cannot be upheld on any such grounds."

Under the section of our statute hereinbefore fully quoted, a gas or water company may lay its pipes and mains through the streets of a city only with the consent of the municipal authorities, and under such regulations as they may prescribe ; but the regulations are only as to the laying of pipes and mains, and have nothing to do with the price of the gas or water passing through the pipes and supplied to consumers.

Counsel for the respondent cites the leading case of *Munn v. Illinois*, 94 U. S. 113, and others of like character, to the effect that where the owner of property devotes it to a use in which the public have an interest, he must, to the extent of the interest thus acquired by the public, submit to the control of such property by the public for the common good. But in these cases the control was exercised by the legislature either directly or through municipalities or agencies clothed by it with the power. In the present case, the legislative authority is wanting. We must therefore hold that said ordinance No. 368 is inoperative and void as to said Pryor & Paullin, their heirs and assigns, in so far as the same purports to establish the price for gas furnished by them to private consumers.

The petitioner will be discharged from custody.

All the Justices concurring.