No. 27,959.

THE CITY OF MANKATO, *Appellee*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JEWELL, and JOHN W. GARDNER, R. W. DOLE and C. A. WILKIN, as the State Highway Commission, *Appellants*.

(266 Pac. 96.)

SYLLABUS BY THE COURT.

MUNICIPAL CORPORATIONS—*Right to Maintain Suit—Location of State Highway System.* A city which is a county seat has no capacity to maintain an action against the state highway commission and the board of county commissioners with respect to the location of highways through the county which form a part of the state highway system.

Appeal from Jewell district court; WILLIAM R. MITCHELL, judge. Opinion filed April 7, 1928. Reversed.

*William A. Smith*, attorney-general, *Roland Boynton*, assistant attorney-general, and *L. E. Weltmer*, county attorney, for the appellants.

*D. F. Stanley* and *R. B. Turner*, both of Mankato, for the appellee; *R. W. Turner*, of Mankato, of counsel.

Municipal Corporations, 28 Cyc. p. 1755 n. 64.

The judgment of the court was delivered by

HARVEY, J.:   This action is brought under our declaratory judgment statute (R. S. 60-3127 *et seq.*) seeking a construction of section 2 of chapter 214 of the Laws of 1925.   The section of the statute sought to be construed reads as follows:  ·

"That the state highway commission, in conjunction with the boards of county commissioners, shall designate in every county in the state certain highways, the total mileage of which shall not exceed 8,690 miles, and the total mileage of which in each county shall not be less than the sum of the north to south and east to west diameters of the counties, and which shall connect the county seats and principal cities and market centers.   Which highways shall constitute the state highway system.   Said state highway system shall include all roads heretofore approved by the state highway department and the federal government under the federal highway act.   The system of roads thus designated shall be constructed, reconstructed, improved and maintained by the boards of county commissioners of the several counties, subject to the supervision of the state highway commission, from funds hereinafter provided."   (Laws 1925, ch. 214, § 2.)

It is alleged that defendants have designated an east and west highway through Jewell county and through Mankato, the county seat, as highway No. 36, and have also designated a road from the south boundary of the county north through Jewell.City, and thence in a north and westerly direction, connecting with highway No. 36 a short distance east of the city of Mankato, and that no state highway has been designated north from Mankato through the county.   It is further alleged that there is a road directly north from Mankato seven miles, thence in a north and easterly direction to the north line of the county, which had previously been approved by the state highway department and by the federal government under the federal highway act, and that the same, by the operation of the statute above quoted, became a part of the state highway system in Jewell county; that instead of designating such highway as a part of the state highway system defendants proposed to designate a road commencing five miles east of Mankato on highway No. 36, running thence north to the north boundary of the county, as a part of the state highway system.   The real purpose of the action is to prevent defendants from designating the highway last mentioned as a part of the state highway system, and to require them to designate the road running directly north from Mankato seven miles, thence north and east to the county line.   Plaintiff further

alleged that the provision for the construction of state highways is in large part made from special motor vehicle license taxes and from the tax on motor fuel, and in the preceding year such taxes in excess of $11,000 were collected in the plaintiff city for the purpose of constructing highways.

Separate demurrers to the petition raising the question, among others, that plaintiff had no legal capacity to maintain this action, were filed by the board of county commissioners and state highway commission and were overruled. Defendants then answered denying, among other things, that there was an actual controversy within the meaning of the declaratory judgment statute with respect to the statute in question, and further raising the question of plaintiff's legal capacity to maintain this action. A trial resulted in a judgment in accordance with plaintiff's contentions. Defendants have appealed.

The first question presented for our consideration, and the only one we shall find it necessary to discuss, is that of plaintiff's legal capacity to maintain the action.

Cities in this state are municipal corporations created primarily for the purpose of local government. (Art. 12, § 5, Const.; R. S. 12-101.) They have only such power and authority as is specifically given them by the legislature, or those that are necessarily implied in the powers specifically given. (City of Leavenworth v. Rankin, 2 Kan. 357; Beach v. Leahy, 11 Kan. 23; In re Pryor, Petitioner, 55 Kan. 724, 728, 41 Pac. 958; State v. Downs, 60 Kan. 788, 792, 57 Pac. 962.) They may sue and be sued as individuals may, with respect to their property or in respect to authority specifically granted to them. (Stevenson v. Shawnee County, 98 Kan. 671, 677, 159 Pac. 5.) But such cities are not the supervisors of the governmental business of other subdivisions of the state such as counties, or of boards or commissions created by the legislature for carrying on the business of the state, such as the state highway commission. A somewhat similar question with respect to the right of a drainage district to maintain an action against the city was raised in Kaw Valley Drainage Dist. v. Kansas City, 119 Kan. 368, 372, 239 Pac. 760, where the court purposely refrained from considering or passing on the question.

In Collingwood v. Schmidt, 125 Kan. 81, 262 Pac. 556, it was held:

"An action to compel public officials to perform their duty should ordinarily

be brought in the name of the state on the relation of the attorney-general or county attorney. A private citizen who has no interest to be protected or rights to be enforced by the determination of the question sought to be litigated, which are personal or specific to him as distinct from other citizens, cannot maintain such action." (Citing *Weigand v. City of Wichita*, 111 Kan. 455, 207 Pac. 651, where many other cases are cited.)

But plaintiff contends that the provision of the statute above quoted, which makes it the duty of the state highway commission, in conjunction with the board of county commissioners, to designate in every county certain highways "which shall connect the county seats and principal cities and market centers," gives to the city a special interest in the matter which enabled it to maintain this action. The statute, of course, had no such purpose. It is "An act relating to the construction, reconstruction and maintenance of a system of state highways in the state of Kansas; . . ." It created a highway commission and imposed certain duties upon it. Among those duties, in conjunction with the board of county commissioners, was the designation of highways which shall constitute a state highway system. In doing so the state highway commission was required to so designate the highways in each county as to connect the county seats and principal cities and market centers; but this statute was never designed to give to county seats, or principal cities, or market centers, authority to maintain actions of a character previously unknown to the law; nor did it enlarge the corporate powers of "county seats," "principal cities," or "market centers."

Neither did the fact that license taxes or motor fuel taxes were paid by some of the inhabitants of the city in the sum alleged confer any authority upon the city to maintain this action. The city, as a municipal corporation, pays no such taxes, and it has no concern with taxes paid by its inhabitants for other than city purposes.

A question similar to the one before us arose in *State v. County Board of Sup'rs*, 216 N. W. 144 (Wis.), decided November 8, 1927, on certiorari to the county board and county clerk to review the action of the county board in levying a tax for highway purposes. The question was whether the city had such interest in the validity of the tax as to enable it to maintain certiorari. It was alleged that the city was one of the taxing districts of the county and paid 46.61 per cent of the entire county tax. It was said:

"The city was only one of the agencies through which the county collected the tax from the individual taxpayer resident of the city. The city had no

such interest in the validity of this tax as to authorize it to maintain an action to set it aside. The tax does not affect the revenues of the city in the least. The city's property is not subject to taxation. But the tax does, immediately and directly, affect each taxpayer to the amount of his tax. The general tax is not a debt against the city, but is a direct charge upon the taxpayer. The city was not the real party in interest. . . . This is the rule that prevails in other jurisdictions. (*Waverly v. Auditor,* 100 Ill. 355, 356; *Mayor v. Alexandria Canal Co.,* 12 Pet. 91, 96, 9 L. Ed. 1012, 1016; *Trustees v. Thoman,* 51 Ohio St. 285, 296, 37 N. E. 523; *Atchison v. State,* 34 Kan. 379, 389, 8 Pac. 367. . . .)

"The fact that section 62.11, subd. 5, of the Statutes gives the common council the power to act for the 'welfare of the public' does not authorize the city to expend public funds to conduct litigation which does not affect the municipality directly, where the fruits of the litigation inure to the benefit of the individual taxpayers resident within the city. The members of the 'common council 'are not the guardians and protectors of private and individual interest or property of the citizen. They may not intervene by action to protect or redress the individual citizen in respect to wrongs or injury to his person or property. Their power as well as duty is restricted to the protection and preservation of property possessed by them in their corporate capacity.' (*People v. Ingersoll,* 58 N. Y. 1, 29.)" (p. 145.)

Also in *County of Albany v. Hooker,* 204 N. Y. 1, an action by the county against the highway commission to have certain acts of the legislature declared unconstitutional, and to restrain defendants from awarding and executing contracts for highways to be constructed from funds available under the act, it was held:

"Counties . . . are not the guardians and protectors of private and individual interests or property of the citizen. They may not intervene by action to protect or redress the individual citizen in respect to wrongs or injury to his person or property. Their power as well as duty is restricted to the protection and preservation of property possessed by them in their corporate capacity." (Syl. ¶ 3.)

Further held:

"When there is no fund or property in existence the title to which is in a county, and no funds or property in the possession of another to which it is entitled to possession, and the entire subject is one of governmental and public policy, independent of its corporate rights, an action cannot be maintained by a county." (Syl. ¶ 4.)

Other cases more or less in point are *Town of New Lebanon v. State,* 181 N. Y. Supp. 322; *City of Chicago v. Tribune Co.,* 307 Ill. 595, and *Chelsea v. Treasurer & Receiver General,* 237 Mass. 422.

From what has been said it necessarily follows that the judgment of the court below must be reversed with directions that the case be dismissed. It is so ordered.