No. 32,501

J. V. HARKRADER, EMMA K. IRWIN, SUE K. COCHRAN and T. A. HACKER, *Appellees*, v. J. E. WHITMAN, WALTER PEDIGO and CHARLES MAWDSLEY, *Appellants*.

(46 P. 2d 1)

Opinion filed June 8, 1935.

R. F. Crick, M. C. Bucklin, both of Pratt, Bennett R. Wheeler, S. M. Brewster, J. L. Hunt, Margaret McGurnaghan, Ralph M. Hope and John H. Hunt, all of Topeka, for the appellants.

William Barrett, George Barrett and W. B. Hess, all of Pratt, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action in the nature of quo warranto to determine who are the duly elected directors of The Wheat Belt Building and Loan Association of Pratt.

The facts necessary for an understanding of the issues are summarized from the trial court's findings: The association was organized in 1919. The by-laws provided for an annual stockholders' meeting on the second Monday in January, and for a special meeting on call of forty percent of the permanent stock. The board of directors was composed of eight members, who held office for a term of two years and until their successors were elected and qualified. Four were to be elected each year. At the annual meeting in January, 1934, four directors, Gebhart, Woolwine, Milne and Cramer, were elected or reëlected. The other directors who held on were Barker, Cochran, Harkrader and Whitman, whose terms would expire in January, 1935. From this board Barker was elected president, Gebhart vice-president, and Cramer secretary of the association. In January, 1934, the authorized capital was $1,000,000, which included $50,000 of permanent stock designated as Class E, with a par value of $100. Of the permanent stock $15,500 had been issued. During the year the association had suffered losses which at various times were charged against the amounts credited to the permanent stock, and by the latter part of 1934 that stock, according to the books, was without value.

At a directors' meeting in December, 1934, the president raised a question as to giving notice of the annual meeting in January, 1935, but the secretary stated as there was no permanent stock there would be no election. Harkrader asked that the notices be issued. No notice was given, however, and no regular stockholders' meeting was held at the appointed time.

On January 17, 1935, a special meeting of the board of directors was held, seven members being present. Harkrader had no notice and was absent. The secretary, Cramer, proposed the board elect officers for the ensuing year. The president, Barker, protested and left the meeting, and thereafter Gebhart was elected president, Milne vice-president, and Cramer secretary. Director Cochran seems likewise to have protested, but whether she refrained from voting or voted in a negative way does not appear clearly from the court's findings.

On February 4, 1935, a petition was filed with the secretary for a special stockholders' meeting. The secretary did not promptly give notice, an alternative writ of mandamus issued, and notice was given on February 15, 1935, for a meeting which was held February 25, 1935.

On January 28, 1935, which was a regular meeting date, the board of directors amended the by-laws by stating the authorized capital to be $2,000,000, of which $50,000 might be issued as Class PC permanent stock, discontinuing issuance of Class E permanent stock. At the next regular meeting on February 11, 1935, the by-laws were further amended to provide for Class PC permanent stock to be issued at full par value and in series with Class CC full-paid shares. Class CC full-paid shares were to be issued upon payment of full par value, but fractional shares could be issued. These shares were given voting power of one vote for each $100 par value at any regular or special stockholders' meeting, but the number of such votes could not exceed the number of Class PC permanent stock "owned and held by the stockholder as shown on the books of the association on the date of such meeting." By amendment of another by-law any permanent stock could be voted by the stockholder of record, or by his guardian or by other person having written proxy, the shareholder being entitled to one vote for each $100 share of permanent stock and one vote for each share of Class CC full-paid shares, with limitation as above noted.

When the stockholders' meeting was held February 25, 1935,

trouble arose. Barker, as president, called the meeting to order and objection to his presiding was made on the ground Gebhart was president. Barker ceased to insist on his right, Gebhart was not present, and Milne, as vice-president, assumed the right and called for a roll call of voting shares which disclosed 152 Class E shares present by owner or proxy and 160 shares of PC permanent and CC full-paid, all present by proxy. Cramer's right to vote eleven shares of Class E permanent stock which he claimed to own was challenged on the ground that the shares did not stand in his name on the association's books, and this is conceded to be correct, and the right to vote any of the 160 shares of PC and CC stock was challenged on the ground the stock was illegally issued and had not been issued thirty days prior to the date of election. Harkrader and Milne were nominated for permanent chairman, and on vote Harkrader received 117 votes of Class E stock and Milne had received 33 votes of Class E stock and 160 votes of PC and CC stock. It is not necessary that we here notice the contention of the parties as to the right to vote classes of shares. Milne declared himself elected chairman. Harkrader, who seems to have led the opposition, and those favorable to his contention were occupying the west side of the room where the meeting was held, and after the result was announced by Milne, Harkrader and his supporters took no further part but, under Harkrader claiming to act as permanent chairman, held an election of their own, at which Hacker received 120 votes, Cochran 120 votes, Harkrader 121 votes and Erwin 119 votes, all of Class E stock, and they were declared by Harkrader elected as directors to serve for the ensuing year. At the same time the meeting under Milne continued, and 33 Class E votes were cast cumulatively for Whitman, giving him 132 votes of Class E stock, and he also received 60 votes of PC and CC stock. Gillett, Pedigo and Mawdsley each received 193 votes of PC and CC stock. These last four qualified as directors. Gillett later resigned. At the time the present action was filed Whitman, Pedigo and Mawdsley were acting as directors.

Plaintiffs brought the action to determine which group had been elected as directors, and after trial the court made findings of fact, some of which appellants contend are not supported by the evidence. The trial court concluded that plaintiffs were the duly elected directors, and that defendants were unlawfully withholding possession of office from the plaintiffs, and rendered judgment accordingly.

The defendants' motion for a new trial was overruled, and they appeal.

Although other matters are involved, as the statement of facts indicates, the main point of controversy between plaintiffs and defendants arose from difference of opinion as to just what classes of stock were authorized to be voted at the stockholders' meeting, the plaintiffs contending that the provisions of the statutes with reference to corporations generally require that—

"No person shall at any election be entitled to vote on any stock, unless the same shall have been standing in the name of the person so claiming to vote, upon the books of the corporation at least thirty days prior to such election." (R. S. 17-604.)

And that none of the Class PC or CC stock had been so standing in the names of the persons voting the same for that required time, while the defendants contend that the general provisions of the statutes with reference to corporations do not control as against specific provisions of the statutes with reference to building and loan associations, to which reference is hereinafter made. The trial court, although making no specific conclusion of law, by its judgment must be held to have adopted plaintiffs' view. It is not necessary that we pay more attention to the detailed vote of each class cast either for any of the plaintiffs or any of the defendants, for if the main question is decided favorably to plaintiffs, then waiving any question about the effect of their withdrawing from the claimed regular meeting, they received a majority of the eligible and legal votes and were thus elected, while if a contrary conclusion is reached as to what stock could vote, then there is no dispute but that defendants received a majority of the eligible and legal votes, and were thus elected.

The provision relied on by the plaintiffs that no person shall be entitled to vote stock in a corporation unless it has stood in his name on the books of the corporation for at least thirty days was contained in the corporation act included in the General Statutes of 1868 (G. S. 1868, ch. 23, § 27). The language of the last clause of the section, not in question here, was slightly changed by section 1 of chapter 88 of the Laws of 1879, and as thus amended it stands today as part of the general corporation laws of the state (R. S. 17-604).

Prior to 1899 building and loan associations had not received much attention by the legislature (Laws 1869, ch. 5; Laws 1870, ch.

43, and Laws 1875, ch. 65), but in that year a comprehensive act was passed for their organization and regulation (Laws 1899, ch. 78). Section 1 of this act (R. S. 17-1001) provided for incorporation and stated the corporation shall be—

"Subject to all the duties, limitations and restrictions conferred by general laws upon corporations, except as hereinafter otherwise provided."

Section 2 of the 1899 building and loan act was amended by chapter 125 of the Laws of 1917 (R. S. 17-1002). It provided for articles of agreement, etc., and the number of directors and the names of those agreed upon for the first year. Section 3, which was amended by chapter 131 of the Laws of 1911 (R. S. 17-1003), provided for adoption and amendment of by-laws by the shareholders, and their approval by the bank commissioner, and section 4, which was unchanged, provided the number, title and function of the officers, their terms of office, time of election and that qualification of electors should be fixed in the by-laws, and that no person should be eligible to be a director unless he owned two shares of the capital stock.

Some radical changes in the powers of building and loan corporations were made by the legislature by the enactment of chapter 127 of the Laws of 1925. By section 11 of that act R. S. 17-1001 was repealed. When it was repealed, no specific statute containing similar language as quoted above, with respect to the general corporation law, was substituted. We need not here consider the effect of the repeal or the failure to enact other provisions of like tenor. By section 11 of the 1925 act R. S. 17-1002 was repealed. By section 1 R. S. 17-1003 was amended so that the board of directors shall have power to adopt and amend the by-laws, with provision that by a two-thirds vote the stockholders may alter, change or amend them. Provision is also made that the by-laws must be approved by the bank commissioner (R. S. 1933 Supp. 17-1003). By section 2 of the 1925 act R. S. 17-1004 was changed to provide that the number of directors must not be less than five but may be more; that the by-laws shall fix the length of term of office of director and may arrange so that the terms of only a certain number shall expire · each year.

"Such by-laws shall also provide for . . . the qualifications of electors, and the time of each periodical meeting of the directors and shareholders of the association."

We need not notice the requirements as to stock ownership.

In the course of the above legislation the words "shareholder," as shown in the last quotation, and "stockholder," as in the provision for two-thirds vote on by-law amendment (R. S. 1933 Supp. 17-1003), and in other instances not here noted, were used, and to clarify matters with respect to qualifications of directors and electors the legislature enacted chapter 150 of the Laws of 1927 (R. S. 1933 Supp. 17-1062, 17-1063), section 1, defining the two words and section 2 providing:

"Any building and loan association may provide in its by-laws, the qualifications for its directors as well as qualifications of electors at stockholders' meetings."

Summarized, the question before us may be stated: Where, under the statutes above noted, a building and loan board of directors adopts by-laws duly approved by the bank commissioner (now by virtue of another statute [R. S. 1933 Supp. 75-13a01, 75-13a02] the supervisor of building and loan associations) providing the qualifications of electors by fixing their ownership of certain specified classes of shares as shown on the books of the association on the date of such meeting, are such holders qualified to act as electors where their shares have not been standing on the books of the corporation in their names for thirty days prior to the meeting as provided by R. S. 17-604?

The requirements of the general corporation laws and the laws pertaining specifically to building and loan associations have been shown. It is a cardinal rule of construction that all statutes are to be so construed as to sustain them rather than ignore or defeat them and to give them operation if the language will permit, instead of treating them as meaningless (2 Lewis' Sutherland on Statutory Construction, § 498; *Clark v. Murray*, 141 Kan. 533, 41 P. 2d 1042). It is also a general rule that where there is conflict between a statute dealing generally with a subject, and another dealing specifically with a certain phase of it, the specific legislation controls in a proper case. While dealing with statutes other than those involved here, the rule was treated in *Wulf v. Fitzpatrick*, 124 Kan. 642, 261 Pac. 838, where it was said:

"The only legal question of importance in this case is the apparent conflict between the statute of wills (R. S. 22-238) and the statute pertaining to the authority of the court to make a division of property in a divorce case, when the divorce is not granted (R. S. 60-1506). These statutes should be construed harmoniously, so that each has a field for its operation, if that can reasonably be done. . . . The statute of wills states the general rule with respect to

a will made by a husband or wife; it does not attempt to deal with the power of the court to render an appropriate decree respecting the property of the parties in an action for divorce, even when for good cause a divorce is not granted. The statute regulating the granting of divorces (R. S. 60-1506) does deal with that specific circumstance, and with that alone. Following the general rule that a statute pertaining to a specific thing takes precedence over a general statute which might be construed to relate to it, we hold that R. S. 60-1506 is valid and applicable to the specific circumstances to which it relates, notwithstanding the statute of wills (R. S. 22-238)." (p. 645.)

It has also been held a statute must be construed in the light of its purpose (*Hooper v. McNaughton,* 113 Kan. 405, 214 Pac. 613), and that statutes, although not strictly in *pari materia,* should so far as possible be construed in harmony with each other (59 C. J. 1042, 25 R. C. L. 1060). There is still the further rule that in interpretation of two statutes dealing with the same subject, the latter in point of time controls (*Arkansas City v. Turner,* 116 Kan. 407, 226 Pac. 1009; *In re Moseley's Estate,* 100 Kan. 495, 164 Pac. 1073, L. R. A. 1917E 1160). All of these rules are but guides to enable the court to determine the intent of the legislature, and applied to the question before us we find that while R. S. 17-604 does provide that only stockholders whose shares have stood in their names for thirty days are entitled to vote at stockholders' meetings, and this refers to corporations generally, by the building and loan laws specific provision is made that by its by-laws the association may fix the qualification of electors at stockholders' meetings. If it be held that stockholders' meetings can only be attended by stockholders as defined by R. S. 1933 Supp. 17-1062, and that the electors must be holders of permanent stock, then an association which has no permanent stock—and there are many which do not—could not have a stockholders' meeting. That specific objection to permitting the issuance of voting power to holders of CC full-paid stock is not made, perhaps for the reason that under the by-laws its voting power is coupled with the ownership of PC permanent stock. It thus appears that the legislature intended to provide that building and loan associations might fix a test to determine who should and should not vote. Such legislation is in a sense special, for it does not affect all corporations, although it is general in the sense that it affects all building and loan associations. As special legislation dealing only with one phase of corporate activity, it takes precedence of the provisions of the general corporation laws, which retain their full force and effect except as to building and loan as-

sociations. Nor can it be said that the provision for fixing qualification of electors is an isolated instance. The general corporation statutes with respect to dissolution of insolvent corporations (R. S. 17-806) are radically different than those applying to building and loan associations (R. S. 17-1032), provisions as to by-laws are not the same (compare R. S. 17-229 with R. S. 1933 Supp. 17-1003) and an examination and comparison will show many other vital differences. There may be and are many provisions of the general corporation act applicable to building and loan associations, but we have no hesitancy in holding that where the legislature made specific provision that the board of directors of a building and loan association may prescribe the qualification of electors at stockholders' meetings it was not its intention that in addition to such prescribed qualifications the electors must also be owners of stock which has stood in their names on the books of the corporation for over thirty days prior to the meeting.

We are not concerned with whether it was wise for the legislature to grant to a building and loan association board of directors the power to adopt, alter, change or amend by-laws which fix qualifications of directors and electors in such manner that members of the board may perpetuate themselves in office. The legislature evidently thought that to provide that such by-laws, to be effective and operative, must be approved by the supervisor of building and loan associations, was a sufficient safeguard.

We notice appellee's contention that the stock was issued in a manner contrary to the by-laws, and particularly R. S. 17-1006, which provides that permanent stock may be issued for which full par value shall be paid at time of issue or in monthly installments of five dollars per share. It may be said the court found the PC permanent and CC full-paid stock had been issued under the amendment to the by-laws of February 13, 1935, and that the shares voted were not eligible to vote for the reason they had not been transferred on the books thirty days prior to the election. Whether the contention is based on the proposition that only holders of permanent stock can be allowed to vote or is based on the thirty-day proposition, it has been answered by what has been said.

It is further argued that the issuance of the stock twelve days before the election was a fraud. It may be remarked that there is no finding of the court that the issuance of the stock was fraudulent.

The trial court found the particular stock was not entitled to vote because it had not stood on the books of the company for thirty days prior to the meeting, and the only illegality the court found was based on that finding. Assuming that fraud is predicated on the fact that holders of other classes of shares turned them into the association for value and upon receiving the association's check, endorsed the same and turned it back to pay for the new class of shares, we note there is no finding that any other shareholder could not have done the same thing. If the shares were otherwise lawful, and that depended entirely on the amendments of the by-laws providing therefor which were duly approved by the supervisor of building and loan associations, the method by which they were paid for, as shown above, did not make the issue fraudulent. The rule seems to be that if stock is issued between the time of the call for a meeting and the date of the meeting, it would be fraudulently issued if not sold for full value, but where it is sold for full value and the corporation is paid therefor there is no fraud. (3 Cook on Corporations [8th ed.] p. 2154, § 614.) Here there is no showing whatever but that the corporation received full consideration for the par value.

And finally, it is argued by appellees that the trial court's conclusion must be sustained because the test of who was qualified to vote at the special election was to be determined by who was entitled to vote had the election been regularly held in January, which was before the PC and CC stock was issued; that under such test only Class E stock was entitled to vote, and appellees received a majority of the vote on that class of shares. In support of this, reference is made to a note in 2 Cook on Corporations (6th ed.), p. 1663, where *Vandenburgh v. Broadway Railway Co.*, 29 Hun (N. Y.) 348, is cited. An examination of that decision shows that the court there applied a statute reciting in part:

"In all cases no share or shares shall be voted upon, except by such person or persons who may have appeared on the transfer books of said company to have had the right to vote thereon, on the day when, by the act of incorporation of such company, the election ought to have been held." (p. 353.)

Somewhat the converse was considered in *Johnston v. Jones*, 23 N. J. Eq. 216, where it was held:

"Stockholders who are not such at the day an election is held, cannot vote, although they were stockholders at the day on which it should have been held." (Syl. ¶ 10.)

In 5 Fletcher no Corporations (Perm. ed.), § 2027, p. 108, it is said:

"In the absence of express provisions to the contrary, the right [to vote at stockholders' meetings] is to be determined as of the time when the election or meeting is held," etc.

We have no statutory provision to such an effect. R. S. 17-604, relied on by appellees, makes the thirty-day requirement refer only to the election and not to the date it should be held. The by-laws of the corporation, both before and after the amendments complained of, required only that stock to be voted should stand in the name of the voter, and there is no effort made to distinguish between regular and special meetings.

It is not necessary that we discuss the question as to whether or not the claimed election of appellees was a nullity because of the withdrawal of the electors from a regularly organized meeting.

We conclude that at the election held February 25, 1935, the appellants were duly elected as directors of the Wheat Belt Building and Loan Association, and that the trial court erred in rendering judgment in favor of the appellees, and its judgment is reversed.