No. 40,524

THE CITY OF GARDEN CITY, KANSAS, *Appellant*, v. FREDERICK WILLIS
MILLER, *Appellee*.

(311 P. 2d 306)

361

Opinion filed
May 11, 1957.

*Lloyd H. Haag,* City Attorney, of Garden City, argued the cause and was on the briefs for appellant.

*Logan N. Green,* of Garden City, argued the cause, and *Ralph C. Fleagle,* of Lakin, and *Ray H. Calihan, Daniel R. Hopkins* and *Ray H. Calihan, Jr.,* of Garden City, were with him on the briefs for appellee.

The opinion of the court was delivered by

Fatzer, J.: The plaintiff, the City of Garden City, appeals from a ruling of the trial court sustaining a motion to discharge the defendant and dismiss a complaint drawn under a city ordinance. The ordinance reads as follows:

"Section 17-515 Revised Ordinances of the City of Garden City, Kansas 1951.

"Persons Under the Influence of Intoxicating Liquors or Narcotic Drugs. Section 15.

"(a) It shall be unlawful for any person who is an habitual user of narcotic drugs or any person who is under the influence of intoxicating liquor or narcotic drugs to drive any vehicle within the city.

"(b) Every person who is convicted of a violation of this section shall be punished by imprisonment for not more than one (1) year or by fine of not less than One Hundred Dollars ($100.00) nor more than Five Hundred Dollars ($500.00) or by both such fine and imprisonment. On a second or subsequent conviction he shall be punished by imprisonment for not less than ninety (90) days nor more than one (1) year, and, in the discretion of the court, a fine of not more than Five Hundred Dollars ($500.00). Provided, that the Police Judge of the city shall report any conviction hereunder to the vehicle department of the State Highway Commission and shall take up and endorse the license of the operator's or chauffeur's license of any such person and forward the same to the said department as provided by law."

The complaint, omitting its signature, caption and verification, reads:

"Before the Police Judge of the City of Garden City, in Finney County, Kansas.

"State of Kansas, Finney County, ss

"Dale Davis, being duly sworn, on oath says that on the 1st day of January, A. D. 1956 in the City of Garden City, in Finney County and State of Kansas, one Frederick Willis Miller then and there being did then and there wilfully and unlawfully drive and operate a motor vehicle within the city limits of said city while under the influence of intoxicating liquor or narcotic drug (17-515) contrary to the ordinances of said city in such cases made and provided."

The motion to discharge the defendant and dismiss the complaint filed May 11, 1956, reads, in part:

"In support of this motion, defendant respectfully represents to the Court that the Ordinance of the City of Garden City, Kansas, under which judgment was rendered against him in the Police Court of said City, being Section 17-515 of the Revised Ordinances of the City of Garden City, Kansas, 1951, and under which Ordinance the prosecution herein was brought, is invalid, illegal, void and of no force or effect for the following reasons: ·

"1. That the same is a violation of and in conflict with Chapter 14, Article 4, Section 14-439, of the General Statutes of Kansas, 1949.

"2. That the same is in conflict with and a violation of the provisions of Chapter 8, Article 5, Section 8-507, 8-508 and 8-530 of the General Statutes of Kansas, 1949.

"3. That the same is not authorized under the laws of the State of Kansas, that no power to adopt that Ordinance has been granted the said City, and that by reason thereof, the same is illegal and void."

The order of the trial court of September 11, 1956, sustaining the defendant's motion to discharge and dismiss the complaint, reads in part as follows:

"1. That Section 17-515 of the Revised Ordinances of the City of Garden City, Kansas, 1951, under which judgment rendered against the defendant in the police court of said city is invalid, illegal, void and of no force or effect in that the penalty provisions of said section are a violation of and in conflict with Chapter 14, Article 4, Section 14-439 of the General Statutes of Kansas, 1949, and amendments thereto.

"2. That there is no expressed statutory authority granting said city, plaintiff herein, the power to enact the provisions of said Section 17-515; that by virtue thereof the police court of said city was and is without jurisdiction to hear the action herein against said defendant."

The plaintiff made exception to the ruling of the trial court, and, pursuant to G. S. 1949, 12-1102, reserved the following legal questions, which are here presented:

"1. Is Section 17-515 of the Revised Ordinances of the City of Garden City, Kansas, 1951, invalid, illegal and void because the penalty provisions therein are in conflict with the provisions of G. S. 1949, 14-439, and amendments thereto?

"2. Did the governing body of the City of Garden City, Kansas, have the power to pass an ordinance containing the provisions of Section 17-515 of the Revised Ordinances of the City of Garden City, Kansas, 1951?" ·

We first discuss the second question reserved by the plaintiff, and note that the provisions of the ordinance are identical with G. S. 1949, 8-530 except the statute applies to "any vehicle within this state," and that the ordinance directs the police judge to report convictions to the vehicle department of the State Highway

Commission and to take up the operator's or chauffeur's license of persons convicted and forward it to that department.

As preliminary to considering this question, we next note the long and well-established rule of this jurisdiction to the effect that the power of a city to pass an ordinance must be vested by the, legislature in the governing body in express terms or be necessarily or fairly implied in and incident to the powers expressly granted, and must be essential to the declared purposes of the corporation (*City of Leavenworth v. Rankin*, 2 Kan. 357; *Anderson v. City of Wellington*, 40 Kan. 173, 176, 19 Pac. 719; *Brown v. City of Topeka*, 146 Kan. 974, 74 P. 2d 142; *State v. Hannigan*, 161 Kan. 492, 170 P. 2d 138); that cities in this state are municipal corporations created primarily for the purpose of local government and have only such power and authority as is specifically given them by the legislature or those that are necessarily implied in the powers specifically given (*Beach v. Leahy, Treasurer*, 11 Kan. 23; *In re Pryor, Petitioner*, 55 Kan. 724, 728, 41 Pac. 958; *The State v. Downs*, 60 Kan. 788, 792, 57 Pac. 962; *City of Mankato v. Jewell County Comm'rs*, 125 Kan. 674, 676, 266 Pac. 96; *State, ex rel., v. Sedgwick County Comm'rs*, 150 Kan. 143, 91 P. 2d 2); and that any fair and reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the power is denied (*Anderson v. City of Wellington*, supra; *State, ex rel., v. City of Coffeyville*, 127 Kan. 663, 274 Pac. 258; *Brown v. Arkansas City*, 135 Kan. 453, 455, 11 P. 2d 607; *Ash v. Gibson*, 145 Kan. 825, 829, 67 P. 2d 1101). For additional authorities on this general subject see 7 West's Kansas Digest, Municipal Corp. §§ 57, 59, and 4 Hatcher's Kansas Digest (Rev. ed.) Muncipal Corporations, §§ 31, 34.

The plaintiff contends it has the power to enact the ordinance by virtue of the Uniform Act regulating traffic on streets and highways enacted by the legislature in 1937 (Laws 1937, Ch. 283; G. S. 1949, 8-501 to 8-5,134, inclusive, as amended), and specifically points to G. S. 1949, 8-507 as authorizing cities to adopt additional traffic regulations so long as the provisions of the ordinance adopted do not conflict with those of the Uniform Act.

The defendant contends generally that the Uniform Act was expressly intended to be applicable and uniform throughout the state and in all municipalities therein; that it occupied the entire field relating to traffic on streets and highways and no city has authority to enact ordinances concerning any of the provisions contained therein except where expressly authorized to do so; and,

that it makes invalid the ordinance of any city purporting to cover the same subject matter of any of its sections as being necessarily in conflict with the section or sections of the Uniform Act purported to be adopted by the ordinance.

The Uniform Act (G. S. 1949, 8-501, *et seq.*) is a complete and independent code dealing with the subject of vehicle and pedestrian traffic, and was intended by the legislature to be applicable and uniform throughout the state and in all counties and cities, and local authorities may not enact or enforce any rule or regulation in conflict therewith but may adopt additional traffic regulations not inconsistent with its provisions. G. S. 1949, 8-507, reads:

"The provisions of this act shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any rule or regulation in *conflict* with the provisions of this act unless expressly authorized herein. *Local authorities may, however, adopt additional traffic regulations which are not in conflict with the provisions of this act.*" (Emphasis ours.)

The defendant asserts that G. S. 1949, 8-508 contains the only power expressly granted to local authorities and no express authority exists therein to enact the ordinance in question. This section reads:

"(*a*) The provisions of this act shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from: 1. Regulating the standing or parking of vehicles. 2. Regulating traffic by means of police officers or traffic-control signals. 3. Regulating or prohibiting processions or assemblages on the highways. 4. Designating particular highways as one-way highways and requiring that all vehicles thereon be moved in one specific direction. 5. Regulating the speed of vehicles in public parks. 6. Designating any highway as a through highway and requiring that all vehicles stop before entering or crossing the same or designating any intersection as a stop intersection and requiring all vehicles to stop at one or more entrances to such intersections. 7. Restricting the use of highways as authorized in sections 111 to 122 [8-5,111 to 8-5,122], inclusive, of this act. (*b*) No ordinance or regulation enacted under subdivisions (4), (5), (6), or (7) of this section shall be effective until signs giving notice of such local traffic regulations are posted upon or at the entrances to the highway or part thereof affected as may be most appropriate."

G. S. 1949, 8-5,111 to 8-5,122, inclusive, referred to in subsection 7 above quoted, deals with the inspection, enforcement, size, weight, load, width, height and length of vehicles which may use the streets of any city and contains no authority to adopt the ordinance in question.

We observe from the provisions of G. S. 1949, 8-507 that local

authorities shall not enact or enforce any *rule* or *regulation* in conflict with the provisions of the act, but that local authorities may adopt *additional traffic regulations,* which are not in conflict with the provisions of the act. As we read this section the terms "rule or regulation" and "additional traffic regulations" were intended by the legislature to mean the manner in which cities generally adopt legislative enactments: *i. e.,* by "ordinance," and as thus construed, local authorities may adopt additional traffic ordinances which are not in conflict with the provisions of the Uniform Act.

The defendant contends that to construe the statute in this manner would subject persons driving motor vehicles upon the streets of a city while under the influence of intoxicating liquor to prosecution in a police court for violation of the city ordinance as well as in a state court for a violation of G. S. 1949, 8-530. While this may occur, the contention nevertheless is without merit.

This court will take judicial notice of the steady migration of the population of Kansas from the rural areas to the cities, resulting in our being an urban state. This fact is frequently brought to public attention, and it is commonly understood that due to increased industrialization in and near the larger centers of population and of changing farming practices, more people reside and more vehicles are registered in the cities than in the rural areas. Undoubtedly, the tragic and ever-growing list of fatalities and the property damage occurring on our streets and highways caused, in part, by persons driving motor vehicles while under the influence of intoxicating liquor was one of the reasons for the enactment of the Uniform Act. We think it clear the legislature intended by G. S. 1949, 8-507 that every force of government be permitted to mobilize and combat this public menace, and that by authorizing local authorities to adopt additional traffic regulations not inconsistent with that act it thereby empowered all cities of the state to adopt ordinances making unlawful the driving of a motor vehicle while under the influence of narcotic drugs or intoxicating liquor within such cities, as one of such additional regulations. This view finds support in G. S. 1955 Supp. 8-1001 to 1007, inclusive, enacted in 1955 to assist law enforcement officials in determining whether persons who are apprehended for driving motor vehicles while under the influence of intoxicating liquor are, in fact, under the influence of intoxicating liquor as therein defined. G. S. 1955 Supp. 8-1001 reads in part:

"Any person who operates a motor vehicle upon a public highway in this state shall be deemed to have given his consent to submit to a chemical test

of his breath, blood, urine, or saliva for the purpose of determining the alcoholic content of his blood whenever he shall be arrested or otherwise taken into custody for any offense involving operating a motor vehicle under the influence of intoxicating liquor *in violation of a state statute or a city ordinance* and the arresting officer has reasonable grounds to believe that prior to his arrest the person was driving under the influence of intoxicating liquor. . . ." (Emphasis ours.)

G. S. 1955 Supp. 8-1005 reads in part:

". . . or in any prosecution for a violation of city ordinance relating to the driving of a motor vehicle while under the influence of intoxicating liquor . . ."

The inclusion in the statutes of the terms "in violation of . . . a city ordinance" and "or in any prosecution for a violation of city ordinance" accords with the view of this court that G. S. 1949, 8-507 authorizes cities to adopt ordinances such as the one in question as "additional traffic regulations" pursuant to the Uniform Act.

The fact that the state has enacted legislation on a subject does not necessarily deprive a city of the power to deal with the same subject by ordinance. (*City of Kansas City v. Grubel,* 57 Kan. 436, 46 Pac. 714; *Minneola v. Naylor,* 84 Kan. 147, 113 Pac. 309; *Kansas City v. Henre,* 96 Kan. 794, 153 Pac. 548; *Garden City v. Legg,* 126 Kan. 569, 268 Pac. 827; *Clemons v. Wilson,* 151 Kan. 250, 98 P. 2d 423.) A municipality may legislate on the same subject so long as the municipal ordinance does not conflict with the state law (*In re Van Tuyl,* 71 Kan. 659, 81 Pac. 181; *Trimble v. City of Topeka,* 147 Kan. 111, 75 P. 2d 241; *State v. Hannigan,* supra), and if there is no conflict, both laws may stand. (*Garden City v. Legg,* supra; *Clemons v. Wilson,* supra; *City of Fort Scott v. Arbuckle,* 165 Kan. 374, 196 P. 2d 217.) Moreover, a conviction under a municipal ordinance covering the same subject matter as a state law constitutes no bar in this state to a conviction for the same act under the state statute (*In re Jahn, Petitioner,* 55 Kan. 694, 41 Pac. 956; *In re Kinsel,* 64 Kan. 1, 67 Pac. 634; *Garden City v. Legg,* supra), nor does such practice violate a citizen's rights guaranteed him by either the federal or state constitution. (*City of Fort Scott v. Arbuckle,* supra; 15 Am. Jur., Criminal Law, § 398, p. 71; 22 C. J. S., Criminal Law, § 296b, p. 449; Note, 48 A. L. R. 1106.)

In *City of Fort Scott v. Arbuckle,* supra, it was said:

"It has long been settled that a single act of an individual may be punished as a violation of a city ordinance, of a state law, and of a federal law. Thus it is conceivable that a defendant found hauling liquor in his car on the streets of Topeka could be charged, tried and punished in police court for violating the city ordinance which prohibits such traffic, charged in a state court by the

prosecuting attorney for this county with violation of the statute making that an offense, and if it should be made to appear that he brought the liquor into Kansas, prosecuted by the federal government for interstate transportation. . . ." (l. c. 385, 386.)

Manifestly, the ordinance in question does not conflict with G. S. 1949, 8-530 since, as we have previously noted, the language, with minor exceptions, is identical to that of the statute both with respect to defining the offense and prescribing the penalty. The ordinance merely complements the statute and is nowhere antagonistic or in conflict with it. Furthermore, the restrictions imposed upon local authorities by G. S. 1949, 8-507 is that additional traffic regulations or ordinances shall not conflict with the provisions of the act. This act does not restrict local authorities from adopting an ordinance containing the provisions of one of its sections, and in the absence of such restriction, we know of no reason why a city may not lawfully adopt and enforce an ordinance containing the provisions of G. S. 1949, 8-530.

The defendant cites cases from other jurisdictions: California, North Dakota, Arizona, Minnesota and New York, as supporting his position. We have reviewed these authorities but they do not lend support since the statutes of those states in the main expressly declare the general law to be exclusive on the subject. Our statute contains no such provision. Furthermore, we note the following authorities support the views of this court on the question presented: *Salt Lake City v. Kusse,* 97 Utah 113, 93 P. 2d 671; *Shaw v. City of Norfolk,* 167 Va. 346, 189 S. E. 335; *State v. Poynter,* 70 Idaho 438, 220 P. 2d 386; *Kistler v. City of Warren,* 58 Ohio App. 531, 16 N. E. 2d 948; *Village of Struthers v. Sokol,* 108 Ohio 263, 140 N. E. 519; *State v. McCall,* 58 N. M. 534, 273 P. 2d 642; *City of Clovis v. Dendy,* 35 N. M. 347, 297 Pac. 141; *Mares v. Kool,* 51 N. M. 36, 177 P. 2d 532; *State v. Hauser,* 137 Neb. 138, 288 N. W. 518; *Gembler v. City of Seward,* 136 Neb. 196, 285 N. W. 542; *Village of Winnetka v. Sinnett,* 272 Ill. App. 143; *State v. Hughes,* 182 Minn. 144, 233 N. W. 874; and, *City of Aberdeen v. Forkel,* 72 S. D. 536, 37 N. W. 2d 407. A great majority of the decided cases sustain the validity of this ordinance. See annotations 21 A. L. R. 1212, 64 A. L. R. 1005 and 147 A. L. R. 566.

In view of the foregoing we conclude that the plaintiff had the power to adopt the ordinance in question, and that the trial court erred in sustaining the defendant's motion to discharge him and to dismiss the complaint.

We next discuss the first question reserved by plaintiff as to whether the ordinance is void because the penalties conflict with the provisions of G. S. 1955 Supp. 14-439. While the penalties prescribed in the ordinance differ from those provided in G. S. 1955 Supp. 14-439, we have concluded they were authorized by G. S. 1949, 8-507 and do not conflict with G. S. 1949, 8-530. Both statutes, G. S. 1955 Supp. 14-439 and G. S. 1949, 8-507, contain sufficient authorization to permit cities of the second class to adopt the ordinance in question. The former statute deals generally with the powers of such cities to maintain the peace, good government and welfare of the city, while the latter deals specifically with regulation of traffic on streets and highways and expressly declares, "The provisions of this act shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein. . . ." (G. S. 1949, 8-507.) These statutes should be construed harmoniously so that each has a field of operation, if that can be reasonably done. Obviously, this can be done. Following the general rule that a statute pertaining to a specific thing takes precedence over a general statute which might be construed to relate to it, we hold that G. S. 1949, 8-530 is applicable to the specific subject to which it relates notwithstanding the provisions of G. S. 1955 Supp. 14-439. In *Sherman County Comm'rs v. Alden,* 158 Kan. 487, 148 P. 2d 509, it was held:

"The terms of a statute dealing with a specific subject are controlling as against divergent provisions of a statute having more general application." (Syl. ¶ 2.)

In *Cutrel v. Best,* 169 Kan. 16, 217 P. 2d 270, it was held:

"Where there is a conflict between a statute dealing generally with a subject, and another statute dealing specifically with a certain phase of it, the specific legislation controls." (Syl. ¶ 1.)

See, also, *Wulf v. Fitzpatrick,* 124 Kan. 642, 261 Pac. 838; *Harkrader v. Whitman,* 142 Kan. 186, 46 P. 2d 1; *Smith v. Henry,* 155 Kan. 283, 287, 124 P. 2d 448; and, *Moody v. Edmondson,* 176 Kan. 116, 269 P. 2d 462.

In view of the foregoing we hold that the governing body of the city of Garden City was empowered and authorized by G. S. 1949, 8-507 to adopt § 17-515 Revised Ordinances, 1951.

The judgment of the trial court is reversed with directions to overrule the motion of the defendant and to proceed in accordance with the views expressed in this opinion. It is so ordered.