No. 22,573.

FRANK SMITH, *Appellant*, v. R. R. HOSFORD, as Building Inspector of Kansas City, *Appellee*.

SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATION—*Power to Enact Police Regulations.* A municipal corporation has no inherent power to enact police regulations, but such authority must be expressly granted or clearly implied.

2. SAME—*Ordinance Relating to Location and Building Garages—Unconstitutional and Void.* An ordinance which puts it in the power of the officers of a city to grant a permit to build a garage, or to refuse such a permit at will, is unconstitutional and void, because it assumes to clothe such officers with arbitrary power to be exercised merely at their will or caprice, whether they are disposed so to exercise it or not.

3. SAME—*Ordinance Relating to Licenses to Build Garages Void.* An ordinance which prohibits a clerk of a city of the first class from issuing a license to build a garage "unless the application for such license be approved by the Board of Commissioners" of such city is for the reasons above indicated void.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed February 7, 1920. Reversed.

*J. K. Cubbison, William G. Holt,* and *Charles A. Blair,* all of Kansas City, for the appellant.

*H. J. Smith,* and *William Drennan,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

WEST, J.: This action was brought to compel the building inspector to grant to the plaintiff a permit to put up a garage. The petition alleged that he complied with the requirements and tendered the legal fee; that the inspector acted under the orders, directions and instructions of the mayor and commissioners and refused to issue the permit. The defendant pleaded that he was at all times acting under such orders and instructions, and that the board had instructed him in writing not to grant a permit to the plaintiff for the reason that the building was to be used for a garage, automobile repair and machine shop for hire, in violation of ordinance No.

16,248, which prohibits the clerk from issuing a license "unless the application for such license be approved by the Board of Commissioners of Kansas City, Kansas." The plaintiff moved to quash the return on the ground that the ordinance was unreasonable and void, which motion was overruled, and the plaintiff appeals.

The ordinance provides in section 1 that it shall be unlawful to locate or operate within the city limits of Kansas City, Kan., any garage or automobile repair shop for pay, without first obtaining a license from the city. Section 2 is in these words:

"That hereafter it shall be unlawful for the city clerk to issue a license to any person, firm or corporation for the purpose of carrying on the business of a garage or automobile repair shop, unless the application for such license be approved by the Board of Commissioners of Kansas City, Kansas."

It is argued that this is void, as it lays down no general rules, but assumes to vest power which is a naked, arbitrary and despotic one; knows no limitations and acknowledges no restrictions.

The defendant seeks to justify under the general-welfare clause, which is section 1508 of the General Statutes of 1915, and reads as follows:

"To make all needful police regulations necessary for the preservation of good order and the peace of the city, and to prevent injury to or the destruction of or interference with public or private property."

It is argued that this has reference to the police power which extends to matters which concern the health, morals, comfort, and safety of the citizens. It is also contended that, while a garage is not a nuisance *per se*, it may be conducted so as to become such, and that its location, erection and conduct may be controlled by the city. Various authorities are cited touching the power of the city, including the declaration of this court in *Desser v. City of Wichita*, 96 Kan. 820, 153 Pac. 1194, that before the courts can interfere with the exercise of legislative power granted to the city to license and regulate jitneys it must appear that it is flagrantly unjust, unreasonable, or oppressive.

The test laid down in *City of Emporia v. Railway Co.*, 94 Kan. 718, 147 Pac. 1095, is this:

Smith v. Hosford.

"The question is whether or not, considering the entire situation and all the circumstances, the action of the city so far fails to measure up to the fair and just and reasonable as to make it clear that such action is arbitrary, capricious, unreasonable, and oppressive." (p. 719.)

In *Anderson v. City of Wellington*, 40 Kan. 173, 19 Pac. 719, an ordinance declaring it unlawful for any society to parade any public street shouting, singing, or beating drums or tambourines, without first having obtained the written consent of the mayor, or other officers of the city, was held void. A good many years ago a party went into court and complained that because he refused to sell his homestead at a grossly inadequate price, the defendant was going to erect small tenement houses for negroes within ten or fifteen feet of such homestead. It was shown that such erection was in pursuance to a threat as to what would be done if the plaintiff refused to sell. The court held that a negro family headed by a preacher could not then be deemed a nuisance *per se*, and the owner could not be prevented from renting a neat cottage to such a family, although located within a few feet of objector's premises. (*Falloon v. Schilling*, 29 Kan. 292.) In *Crawford v. City of Topeka*, 51 Kan. 756, 33 Pac. 476, it was held that while cities of the first class may regulate the erection and maintenance of billboards, an ordinance prescribing that none should be erected for advertising purposes unless placed at a distance from the line of any street or sidewalk five feet greater than the height of such billboard, was unreasonable and invalid. In the opinion, the present chief justice called attention to a multitude of things a city may constitutionally do, but pointed out that a limitation on the use of private property without reason or necessity cannot be enforced. In *Paola v. Wentz*, 79 Kan. 148, 98 Pac. 775, this court held the officers of the city could not, against the objection of the owners, remove from the street a shade tree merely for the sake of enabling them to place a sidewalk in a position different from that prescribed by ordinance. It was said:

"When the city is called upon to answer in court why it is about to destroy a tree, which perhaps has been brought to its present state by years of patient care and which may be a source of comfort and gratification to an entire community, and offers a reason that proves untenable, it cannot then, while refusing to disclose any further purpose, take the benefit of a presumption of rightful conduct." (p. 153.)

This was but another way of saying that municipal officers are not sovereign or exempt from the constitutional limitations or restrictions binding other officers and persons. It has twice been said that the tyranny of the American system of government very largely consists in the action of the municipal authorities. (*Swift v. City of Topeka,* 43 Kan. 671, 674, 23 Pac. 1075; *City of Emporia v. Railway Co.,* 94 Kan. 718, 722, 147 Pac. 1095.) If there ever was any disposition on the part of Americans, and especially Kansans, to brook tyranny in any form, the events of the last few years have not increased such disposition. Of course, a garage is not a nuisance of itself, but is becoming more and more necessary and profitable, and is a legitimate and lucrative means of making a living and adding to one's capital. While, no doubt, a city may regulate and look after the operation of this, as well as other things, which, by an unlawful use may become injurious, it cannot, without tyranny, refuse a citizen the right to use his property in this way when properly managed. And, by the same token, it must be held that a city cannot authorize one or more of its officers to prohibit such use.

In 1880, the city of San Francisco enacted an ordinance making it unlawful for any person to establish or maintain a laundry within the city without first having obtained the consent of the board of supervisors, unless such building was constructed of either brick or stone. The constitution authorized the city to make and enforce within its limits all such regulations as were not in conflict with the general laws. Yick Wo was arrested for engaging in the laundry business in violation of this ordinance. He was convicted and brought *habeas corpus* proceedings in the supreme court of California, where it was held valid. It was said that to prevent the construction of wooden buildings within the densely inhabited parts of the city may become an imperative duty on the part of the authorities, that the use of wooden buildings may become quite as detrimental as the erection of new ones. A subsequent ordinance was passed making it unlawful to maintain a laundry without first having obtained a certificate signed by the health officer that the premises were to have sufficient and proper drainage, etc., but this was held not to repeal the former ordinance. The case was appealed to the Federal supreme court, where the two ordinances were held void. While

Smith v. Hosford.

the real gist of the decision emanated from the unconstitutional operation of these enactments as arbitrary and unreasonable, some clear and cogent things were said by the court, speaking through Mr. Justice Matthews, which we quote with approval as sound doctrine applicable to the case before us:

"They (the ordinances) seem intended to confer, and actually do confer, not a discretion to be exercised upon a consideration of the circumstances of each case, but a naked and arbitrary power to give or withhold consent, not only as to places, but as to persons. . . . The power given to them (the supervisors) is not confided to their discretion in the legal sense of that term, but is granted to their mere will. It is purely arbitrary, and acknowledges neither guidance nor restraint." (*Yick Wo v. Hopkins*, 118 U. S. 356, 366.)

It was also said:

"When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power." (p. 369.)

Later in the opinion it was said that the court was not obliged to reason from the probable to the actual, and pass upon the validity of the ordinance complained of as tried merely by the opportunities which their terms afford of unequal and unjust discrimination in their actual operation, but it appeared that whatever their intent may have been they were so oppressive as to show an unequal protection of the laws:

"For, the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself." (p. 370.)

(See, also, *Cicero Lumber Co. v. Town of Cicero*, 176 Ill. 9.) The rule is thus laid down in Cyc.:

"Except where the corporation has special charter power to enact the by-law or ordinance, the courts not only annul ordinances and by-laws, because they contravene the higher laws of constitutions and statutes, but they do not hesitate to declare them void and inoperative because they appear to the judicial mind unreasonable or oppressive." (28 Cyc. 368.)

Ruling Case Law sets forth as fundamental:

"A municipal corporation has no inherent power to enact police regulations, but derives it solely from the legislature, and consequently can

exercise only such police power as is fairly included in the grant of powers by its charter." (19 R. C. L. 800, § 108.)

"A municipal ordinance of a regulatory nature in contravention of the natural rights of individuals enacted under general charter powers is not only required to be constitutional, but it must be reasonable as well; that is, the court before which it is brought must be able to see that it will tend to promote the public health, morals, safety or welfare; that the means adopted are adapted to that end, and that it is impartial in operation and not unduly oppressive upon individuals." (19 R. C. L., 805, § 112.)

"It is clear that if an ordinance is passed by a municipal corporation which upon its face restricts the right of dominion which the individual might otherwise exercise without question, not according to any general or uniform rule, but so as to make the absolute enjoyment of his own depend upon the arbitrary will of the governing authorities of the town or city, it is unconstitutional and void, because it fails to furnish a uniform rule of action and leaves the right of property subject to the despotic will of the municipal officers, who may exercise it in accordance with some principle which it would not be within the constitutional power of the state to sanction or even so as to give exclusive profits or privileges to particular persons. . . . On the one hand it is plain that an ordinance which for example prohibits the erection of any building in a city without a permit but prescribes no building regulations is invalid, because erecting a building is a lawful and harmless act, and such an ordinance might be used to regulate the character of buildings in each section of the city, a power which the legislature itself could not exercise." (19 R. C. L., 813, § 118.)

"It is held, however, by the weight of authority that an ordinance which lays down no requirements to be followed and no general and uniform rule, but merely prohibits the erection of any building within the corporate limits without a permit, is invalid, since it leaves the granting of a permit in the arbitrary discretion of the municipal authorities which may be exercised upon some unwarranted principle and which is not subject to judicial review since the court cannot say whether the plans of the proposed building comply with the municipal requirements or not." (19 R. C. L., 830, § 134.)

It is urged that all officers are presumed to do their duty and act fairly, and that it must be presumed that officers called upon to grant permits of this sort will not act arbitrarily or capriciously. Very well. The trouble with this ordinance is that it puts it in the power of such officers thus to act whether they are so disposed or not, and such assumed authority is a transgression on the rights of citizens and an infringement upon the constitutional safeguards by which they are protected.

The motion to quash the return should be sustained, and the cause is remanded with directions so to do.