No. 23,680.

THE CITY OF WICHITA, *Appellee,* v. LOUIS WOLKOW, *Appellant.*

SYLLABUS BY THE COURT.

CITY ORDINANCE—*Specifying Duties of Pawnbrokers and Secondhand Dealers, and Providing Punishment for Violation Thereof.* An ordinance of the city of Wichita requiring every pawnbroker and secondhand dealer to keep a certain register, also requires the buyer to make out and deliver to the police department every day before the hour of 12 a. m. a copy of such register bearing each of the thumb prints of the seller, together with his or her original signature. *Held,* reasonable and valid.

Appeal from Sedgwick district court, division No. 3; JESSE D. WALL, judge. Opinion filed December 10, 1921. Affirmed.

*S. B. Amidon, S. A. Buckland, H. W. Hart,* and *Glenn Porter,* all of Wichita, for the appellant.

*Robert C. Foulston,* and *George Siefkin,* both of Wichita, for the appellee.

The opinion of the court was delivered by

WEST, J.: The sole question presented is the constitutional validity of the ordinance under which the defendant was convicted. Section 1221 of the General Statutes of 1915, authorizes the mayor and council to levy and collect a tax upon and regulate among other things certain named occupations "and any and all other businesses, trades, avocations or professions not above mentioned." Section 1508 authorizes them to make the needful police regulations "necessary for the preservation of good order and the peace of the city, and to prevent injury to or the destruction of or interference with public or private property." It is a settled law that "a municipal corporation has no inherent power to enact police regulations, but such authority must be expressly granted or clearly implied." (*Smith v. Hosford,* 106 Kan. 363, syl. ¶ 1, 187 Pac. 685.) The ordinance in question requires every pawnbroker and secondhand dealer to keep at his place of business a register in which he shall enter in writing a minute description of all property taken, purchased or received by him in the conduct of his business, together with the time of the purchase and the name and place of residence of the one selling it and the amount paid for it. He must also make such entries within one hour after the purchase and they shall be made in ink and shall not in any manner be erased, obliterated or defaced; and—

"It shall be the further duty of every such dealer or buyer to make out and deliver to the police department of the city, every day before the hour of 12 a. m. a legible and correct copy from said register of all property received or purchased during the preceding day, together with the time when received or purchased and a good description of the person or persons from whom the same was purchased: *And provided further,* That any such copy of said register of property received and purchased during the preceding day, as above provided, shall in addition to the foregoing requirements, bear each of the thumb prints of the person from whom such property was received or purchased together with his or her original signature. Said finger print or thumb print shall be taken in the usual approved manner, and shall not be blurred or obliterated."

These reports are to be made upon forms to be furnished by or approved by the director of the department of public safety.

The defendant, who was convicted of buying a typewriter without complying with this ordinance, argues that while it is competent for a city to require secondhand dealers and pawnbrokers to require a description of the seller of property, nevertheless their lines of business are legitimate and necessary; that persons making the sales refuse to have their thumb prints taken; that the ordinance prohibits them from dealing in secondhand articles of any kind; that it is unreasonable, and if a thief should sell stolen property he could frustrate the ordinance by evasion and exchange of cards. It is contended that the ordinance is unconstitutional under the bill of rights and under the fifth and fourteenth amendments to the federal constitution as in excess of the power of the city, in that it places unreasonable restrictions upon business.

It has become recognized by the business world and by the courts that pawnbrokers and secondhand dealers have occasion to deal with so many who have small regard for the criminal law and are actual receivers of stolen goods that for the benefit of the public somewhat severe restrictions are justified. Registration and description are conceded to be within the municipal power, but while it is contended that constitutional guaranties are violated by this ordinance, our attention is called to no judicial ruling to that effect.

In *Smith v. Hosford,* 106 Kan. 363, 187 Pac. 685, the question of municipal power to enact ordinances was considered and the former opinions of this court cited as well as divers ones from other states and text-writers. In that case an ordinance was held void because it assumed to clothe certain officers of a city with power to be exercised at their will or caprice. 19 R. C. L. 805 was quoted to the effect that an ordinance of a regulatory nature in contra-

vention of the natural rights of individuals must not only be constitutional but reasonable, and when it is questioned the court must be able to see that it will tend to promote the public health, morals, safety or welfare; that the means adopted are adapted to that end; and that it is impartial in operation and not unduly oppressive upon individuals.

While the requirements of this ordinance may work considerable inconvenience to those engaged in secondhand business, the good intended to be accomplished is so manifest that the court does not feel authorized to declare the ordinance arbitrary or unreasonable. The changing needs of advancing civilization, as well as the growing acuteness and sagacity of those fatally bent on mischief alike require more legislative restrictions than may have been necessary in more simple times. All citizens within reasonable limits must help bear the burden that present conditions make requisite for the public welfare.

"Dealers in junk and secondhand articles are subject to rigid control and regulations for several reasons. First, like pawnbrokers, they are constantly receiving stolen goods, either innocently or otherwise. Second, they are very apt to gather together a mass of inflammable matter in combustible buildings. Third, they frequently have in their possession clothing and other articles infected with disease." (19 R. C. L. 862.)

When property is stolen for the purpose of disposition, the guilty party who sells it can find so many methods of evading and avoiding detection and arrest that for the sake of property owners and for the enforcement of criminal law those whose business naturally and necessarily includes transactions with such lawless persons may reasonably be required to use the safeguards provided by this ordinance, and by so doing they are not deprived of any right vouchsafed to them under the state or federal constitution.

It is suggested that the evidence showed no criminal intent on the part of the defendant, but in many, if not most misdemeanor cases intent is not a necessary ingredient of the offense. Things are made unlawful by legislatures and councils not because inherently wrong but to promote the general welfare, and those who violate such enactments may be called upon to pay the penalty without thereby being classed with malefactors who intentionally violate the greater sanctions of society.

The judgment is affirmed:

WEST, J. (dissenting): To me this ordinance seems ridiculous in

form and viciously unreasonable in character. Let us suppose a perfectly possible situation. The mayor sells a library table and his wife a piano; the banker sells a bookcase and his wife a buffet; the superintendent of schools sells a set of encyclopedias and his wife some bookshelves; and the pastor sells a filing case and his wife a cookstove. The secondhand dealer who buys these articles registers the property with a description of it and the names of the sellers and also makes these entries within one hour of the purchase. But because he does not within an impossible time—before 12 a. m. of the next day—have on the copy the thumb prints of each of these sellers he is guilty of an offense. He may be a city officer under the mayor, a depositor in the banker's institution, a patron of the superintendent's schools, and a member of the pastor's church. But while not required to put their pictures in the rogue's gallery, he is compelled to furnish their thumb prints so that the police department may be the better enabled to catch thieves.

No wonder that section 2 of the ordinance provides that—

"If any terms or provisions hereof shall be held to be unreasonable, illegal, unlawful, *ultra vires* or void, the same shall not, in any manner be construed to annul, render void or make ineffective any other provision or requirement of this ordinance."

This is a shining example furnished by the modern craze to do everything by statute or ordinance and barb-wire and barricade every citizen from the sweet cooing of childhood to the asthmatic crackling of old age within certain constricted limits of human action and conduct.

The defendant was asked if he tried to force any of his customers to take finger prints, and he answered, "Well, I attempted to take it of a woman and she attempted to slap my face." Another secondhand dealer testified that the reason his customers would not submit to this ordinance was "they thought they were not criminals and didn't want to put their finger prints on."

No reason is apparent why men who deal in secondhand goods should be thus fettered, or why persons who sell to them should be thus humiliated, and such requirements impress me as entirely outside the realm or rule of reason.