No. 34,381

JOHN YEHLE, *Appellant*, v. STAMEY-TIDD CONSTRUCTION COMPANY et al., *Appellees*.

(94 P. 2d 328)

Opinion filed October 7, 1939.

*J. N. Tincher, Clyde Raleigh*, both of Hutchinson, and *Leaford F. Cushenbery*, of Medicine Lodge, for the appellant.

*C. M. Williams, D. C. Martindell, W. D. P. Carey, Wesley E. Brown* and *J. H. Else*, all of Hutchinson, for the appellees and cross-appellants.

The opinion of the court was delivered by

DAWSON, C. J.: This action originated as a proceeding under the workmen's compensation act. On March 10, 1937, the respondent construction company was engaged in digging a sanitary sewer. The appellant, one of its workmen, was employed in operating its excavator. By some mishap a crane carrying a load of tile was swung over his head; then something broke and he was hit on the head and knocked unconscious, and his collar bone, right shoulder and back were injured.

Without any ado his employer began paying him compensation at the rate of $14.40 per week and so continued until June 2, a period of

12 weeks, a total of $172.80. On June 4 appellant filed a formal claim for compensation. A hearing was held thereon on July 15, at which time respondent paid him five weeks' additional compensation, $72. The examiner for the commission found that claimant was still suffering from his injuries and was under temporary total disability and entitled to compensation at the rate of $9 per week for a further period of 26 weeks, which aggregated compensation payments for 43 weeks altogether. This award was made accordingly by the compensation commission on July 27, 1937.

A month later a stipulation and agreement on behalf of claimant and respondents was filed with the commission reciting in brief the substance of the foregoing award and alleging that—

"The claimant is desirous of making a lump-sum settlement of 95% of the balance ($153) still due and owing on said award, and the respondent and the insurance carrier are willing to pay 95% of said $153 balance of award"—to wit, $145.35.

It was further stipulated that this lump-sum settlement was being made at the request of the claimant.

On August 28, 1939, the compensation commission made an order incorporating these antecedent details, and continuing thus:

"Now, therefore, the commissioner being duly advised in the premises, is of the opinion that the award heretofore made on July 27, 1937, should be modified in accordance with the agreement of the parties.

"Wherefore, the award heretofore made on July 27, 1937, be and the same is hereby modified to an award of one hundred forty-five and 35/100 ($145.35) dollars, and the agreement of the parties that same be paid in one lump sum is hereby approved; the award of July 27, 1937, to otherwise remain in full force and effect."

Pursuant to this order, respondent paid the balance due thereon, also the hospital and medical expenses, $62.40, the regular fees of the commission, $25, and of its reporter, $48.50. The requisite receipts pertaining thereto were filed on September 8, 1937.

Some five months thereafter, on February 3, 1938, claimant filed with the compensation commission an application to reopen the proceedings summarized above and to set them aside on alleged grounds of mutual mistake, inadequacy of the award and his continued incapacity. This application was denied on February 10, 1938. The order of that date contains the following:

"The judgment of the commissioner is that at this time he has no jurisdiction in this matter, as the modification of award issued on August 31, 1937, became a finality when no appeal was taken within twenty (20) days."

On February 24, 1938, a second application was filed with the commission, in which claimant alleged that the stipulation and agreement which he signed on August 28, 1937, pursuant to which the compensation commissioner had entered the order modifying the award, was the result of a mutual mistake of fact, and that the lump sum paid him by respondents in accordance therewith and for which he had given a receipt was wholly inadequate; that instead of a temporary total disability of 43 weeks, as found by the commission, claimant was still totally disabled and would continue so to be for the rest of his life. Claimant's application concluded with a prayer that the matter be set down for hearing touching the mutual mistake of fact, and for an award for total disability.

Respondents met this application with a motion to dismiss, giving a recital of all the antecedent proceedings, invoking the provisions of G. S. 1935, 44-528, and challenging the jurisdiction of the commission.

On March 28, 1938, the commission, although adhering to its ruling of February 10, 1938, laid aside for the time being the question of its further jurisdiction, and granted a hearing on claimant's second application filed on February 24. By agreement of the parties the entire antecedent record and files of the claim, including the transcript of the evidence, were to be considered by the commission in this belated hearing. Claimant gave testimony of his continued total incapacity. Dr. Hunter Duvall testified that he had recently examined the claimant and had discovered no improvement in claimant's physical condition, which, he said, was "pretty good evidence that (he, the witness) was wrong," when at the previous hearing he had testified that claimant "would be well within a period of about six months." At the earlier hearing Doctor Duvall had testified that the duration of claimant's injury could not then be predicted. His earlier testimony had been: "The chances are the motion will increase as time goes on." Also, at the earlier hearing, a Doctor Butler had testified that he thought claimant would be permanently disabled to some extent.

Two other doctors, who had given testimony at the former hearing, also testified to the claimant's continued incapacity. But neither of the latter had given a positive opinion at the earlier hearing that claimant would fully recover in six months.

Respondents introduced no testimony further than what was in-

cluded by the stipulation that all the antecedent record was to be considered.

On April 6, 1938, the compensation commission denied the application of February 24, but in its order to that effect it added this recital:

"The evidence . . . discloses that claimant has not recovered from the injury received March 10, 1937, and is unable to return to his usual work or perform manual labor at this time; and claimant *testifies* that he had heard the testimony given by the doctors on July 15, 1937, and took their testimony and diagnosis of the case as correct, and felt that *possibly* within three to six months he would be able to return to his usual work, and entered into a lump-sum settlement."

From this order denying claimant's second application to set aside the original award and its modification and the lump-sum settlement, claimant appealed to the district court. Respondents filed a motion to dismiss, reciting all the pertinent facts and invoking G. S. 1935, 44-528.

In an opinion and decision rendered on January 12, 1939, the trial court construed the statute in favor of claimant, but also held that "there is nothing before this court upon which it can base a finding of fact as to the (alleged) mutual mistake."

Respondents filed a motion to modify these rulings and for additional findings, whereupon the court reconsidered the legal questions presented, set aside its judgment of January 12, and on February 25 gave judgment adhering to its former ruling as to the law of the case—that it was the duty of the compensation commission to entertain and consider claimant's second application filed February 24, 1938; but the court further held that as the commission had in fact permitted claimant to present testimony on the subject of his continued incapacity, such testimony considered together with all the evidence which had been taken at the prior hearing on July 27, 1937, did not constitute sufficient evidence upon which a further award of compensation could be made. The trial court therefore concluded that the order of the commission refusing to set aside the award of July 17, 1937, and the modification thereof entered on August 28, 1937, should be affirmed.

Claimant appeals, contending that the first award and the later modification thereof were the result of a mutual mistake of fact, and that G. S. 1935, 44-528, was not controlling. Respondents present a cross-appeal, still contending that the compensation commis-

sion did not have jurisdiction to entertain claimant's second application of February 24, 1938, and that the trial court erred in ruling to the contrary.

The principal legal question we have to decide is whether G. S. 1935, 44-528, governs the controversy. So far as here pertinent it reads:

"At any time before *but not after the final payment has been made under or pursuant to any award or modification thereof agreed upon by the parties,* it may be reviewed by the commission upon good cause shown upon the application of either party . . ."

If the award in this case had stood as originally made by the commission—$9 per week for 26 weeks, plus the amount theretofore paid by the employer before the claim was filed with the commission, $14.40 per week for 12 weeks, plus the amount paid on order of the commission at the time of the hearing, $14.40 for 5 weeks, and such future payments for 26 weeks had been made in accordance with such original award, the date of such final payment would have matured on January 25, 1938, certainly the statute we are considering would have been an absolute bar to any further review of the award on claimant's application filed February 3, 1938.

Is the bar of the statute any less potent because the original award was modified by agreement of the parties, when such modification was approved by the commission and the award thus modified has been complied with and paid by the employer, all in conformity with the procedure outlined in the statute G. S. 1935, 44-526, and as prescribed by the compensation commission? We think not. A modification of an award is to all intents and purposes a new award when approved by the compensation commission. (*Dobson v. Apex Coal Co.,* 150 Kan. 80, 83, 91 P. 2d 5.)

Our attention is directed to the preceding section of the compensation act (G. S. 1935, 44-527), in which it is provided—it would be more accurate to say it is implied—that at any time *within one year* after the date of an agreement, release of liability, final receipt, or agreed modification of an award filed with and approved by the commission, either the claimant or his employer may institute proceedings to set either of these matters aside.

This apparent inconsistency between these two sections of the act has frequently taxed the ingenuity of the bench and bar, as well as the compensation commission, to determine which of them governs in a particular case. (*Mishler v. Kelso Grain Co.,* 133 Kan. 38, 41,

298 Pac. 655; *Hurst v. Independent Construction Co.*, 136 Kan. 583, 16 P. 2d 540; *Farr v. Mid-Continent Lead and Zinc Co.*, 150 Kan. 292, 92 P. 2d 124.) The trial court, in the instant case, held—

"The two sections of statute are just inconsistent, but reason, right and justice demand that the court follow the first section, G. S. 44-527, providing for a year's statute of limitations, rather than G. S. 44-528, which operates in effect as an immediate bar to the bringing of any action to set aside awards and so forth on the ground of fraud, mutual mistake or practically anything else. Therefore, this court is of the opinion that the workmen's compensation commission was in error in holding that it was without jurisdiction to hear and determine the matter."

This court has often said that a trial court's reasons for its decision are not important if the decision itself is correct. (*In re Estate of Dennis*, 146 Kan. 121, 126, 68 P. 2d 1083.) But a conflict or apparent inconsistency of sections of statute cannot be disposed of by a mere judicial ruling that one section of a statute is right and just and therefore to be applied and enforced, and that another section is wrong and unjust and therefore is to be ignored and discarded. Where general rules and principles of law are discovered and developed by lawyers and judges, a choice between such of these as may be in conflict is altogether proper; but where we are dealing with statutory enactments the intention of the legislature is the unquestionable authority on what is right and just—not what lawyers and judges think it ought to be. And in every problem of statutory interpretation an assiduous effort must be made to find an operative field for every word and phrase of the legislative enactment. (*Clark v. Murray*, 141 Kan. 533, 41 P. 2d 1042; *Harkrader v. Whitman*, 142 Kan. 186, 192-193, 46 P. 2d 1.)

Certain aspects of G. S. 1935, 44-527 and 44-528, which provide for enlarging, diminishing or terminating an agreement concerning compensation or an award of compensation, at the instance of workman or employer, within one year after such agreement has been effected or such an award has been made, have been part of the compensation act since its first enactment. (Laws 1911, ch. 218, §§ 29, 32. G. S. 1915, §§ 5923, 5926.) Those provisions were rewritten with some procedural changes in 1917. (Laws 1917, ch. 226, §§ 15, 16, R. S. 44-527, 44-528.) In 1927 the act was again revised (Laws 1927, ch. 232, G. S. 1935, 44-501 *et seq.*). This is the last expression of the legislative will on the two sections of the act under present scrutiny. In section 27 (G. S. 1935, 44-527) the principal change from its earlier text was the addition of a proviso which reads:

"*Provided,* No proceedings shall be instituted by either party to set aside any such agreement, release of liability, final receipt for compensation or agreement modifying an award, unless such proceedings are commenced within one (1) year after the date any such agreement, release of liability, final receipt for compensation or agreement modifying an award has been so filed and approved by the commission."

As already quoted, section 28 (G. S. 1935, 44-528) provides for a review of an award or modification thereof agreed upon by the parties "at any time before but not after the final payment has been made."

It will be noted that in the language of section 27 quoted above the right of workman or employer to institute proceedings within one year to set aside an agreement, release of liability, final receipt or agreement modifying an award, is recognized, although not expressly granted. However, such right is expressly granted in the first five lines of the succeeding section (sec. 28) and such proceedings may be instituted at any time *before* but *not after* final payment has been made. Considering these sections together, it seems reasonably clear that there is a field of practical usefulness for both these statutory regulations. Ordinarily the allowance of compensation, however it was fixed, by agreement, award, or otherwise, may be reviewed—that is, enlarged, diminished, or terminated—at the instance of either party, unless final payment has been made. If final payment has been made, a complete finality is thereby reached, and no further proceedings can be entertained by the compensation commission. It follows that the compensation commission's ruling that it had no jurisdiction to hear claimant's application for a further review of the award after final payment of the modified award had been made was correct and should have been sustained by the trial court.

In view of this conclusion it seems rather superfluous to consider the second point of this appeal, but it can be disposed of in short order. The trial court made a finding of fact that a consideration of the entire record did not disclose sufficient evidence on which a further award of compensation could be made. Certainly on this phase of the appeal, no error in that finding is made to appear. While certain doctors testified that in their prior testimony on which the award was originally made, they had been mistaken as to the extent and duration of claimant's disability, yet there was also testimony that claimant's injuries had never been so serious or painful as he and his witnesses had represented. Thus, one witness, an orthopedic surgeon, testified:

"This man shows a tendency to be stoop-shouldered. . . . I got the impression that he didn't have as much pain as he complained of. . . . In my judgment his limitation of motion is caused by his round-shouldered attitude. In my opinion the injury received on March 10 is not the cause of the present trouble with his back. . . .

"Q. As far as any injury to the back he received at the time on March 10, that is entirely recovered? A. I think so, I think his back condition, I think his back is just the same now as it was before the injury. . . ."

One of the basic grounds on which claimant sought to reopen the proceedings was that of mutual mistake. But, however he and his witnesses may have been mistaken as to the extent and probable duration of his disability, he certainly did not adduce any convincing evidence that such mistake was mutual—that his employer as well as himself had been mistaken at the time the award was made or at any time thereafter. In that respect, if this proceeding had been otherwise maintainable, claimant failed in his proof of mutual mistake.

In *Gardner v. Ark Warehouse Co.,* 148 Kan. 190, 80 P. 2d 1066, where the seemingly persuasive force of the evidence in behalf of claimant was emphasized, we said:

"We must remind counsel of the very limited scope of appellate review conferred by statute on this court. We have jurisdiction of questions of law only. (G. S. 1935, 44-556.) Whether the evidence adduced would support the plaintiff's claim, if given the most generous credence, is not for this court to decide. . . . Nowhere in our reports, however, will a case be found where we have substituted our judgment for that of the compensation commissioner and the trial court where they have held the evidence insufficient to support an award to the workman or his dependents under the terms of the act." (pp. 192, 193.)

In view of the foregoing, on claimant's appeal the judgment must be affirmed, and on the cross-appeal it must be reversed. It is so ordered.

SMITH, J., dissents from the rule stated in the first paragraph of the syllabus and corresponding portion of the opinion.