No. 34,549

FRED CLEMONS, *Appellant,* v. O. W. WILSON, RAY CHAMBERS and FLOYD GONSALUS, *Appellees.*

(98 P. 2d 423)

Opinion filed January 27, 1940.

*Charles B. Hudson, Roger P. Almond* and *George Seifkin,* all of Wichita, for the appellant.

*Vincent F. Hiebsch* and *K. W. Pringle,* both of Wichita, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action to replevin forty-nine slot machines. Judgment was for defendants. Plaintiff appeals.

The petition alleged that plaintiff was a resident of Wichita and defendants were police officers of Wichita; that on December 31, 1938, plaintiff was the owner of forty-nine slot machines, describing them; that these machines had not been used, were not intended for use, and would not have been used in Wichita, in Sedgwick county, or within the state of Kansas, and were merely stored in the basement of plaintiff's home, and that two of the defendants came upon the premises of plaintiff and took possession of all the machines, removed them or had them in their possession, and refused to deliver them to plaintiff upon demand; that plaintiff had filed his affidavit in replevin and an undertaking as required by the statutes.

The prayer was for a return of the machines or for a judgment against defendants for $4,900.

The answer was first a general denial. The answer then admitted the official capacity of defendants; that plaintiff was one of the owners of forty-nine slot machines and that the machines were in the possession of defendants as police officers of Wichita. The answer then denied that plaintiff was entitled to possession of the ma-

chines, but alleged that they were held by the defendants as police officers of the city of Wichita for the reason that on the 9th day of January, 1939, plaintiff was found guilty of possession of these machines in the police court of Wichita, and as part of the judgment assessed against plaintiff in that case the police judge ordered the destruction of the machines in compliance with section 34 of ordinance No. 11-592 of the city of Wichita; that defendants had not destroyed the machines because plaintiff had appealed his case to the district court, where it was pending; that defendants were holding the machines for the purpose of destroying them if the judgment should be upheld, and as evidence in the case; and defendants were rightfully in possession of the machines under ordinance No. 11-592.

In the reply plaintiff alleged that ordinance No. 11-592, section 34, was unconstitutional, illegal, and void, as being in contravention of the constitution and bill of rights of the United States and of the state of Kansas.

The plaintiff prayed for judgment.

The journal entry recited that at the hearing defendants waived any defense raised by that portion of their answer wherein they claimed to be holding the machines as evidence so as to submit the question to the court on the motion of plaintiff on the question of the validity of the ordinances. The trial court overruled the motion of plaintiff for judgment on the pleadings and gave judgment for the defendants. Plaintiff appeals from this judgment.

The ordinances in question are as follows:

"SECTION 3. *Punch Boards and Slot Machines.* Any person who shall set up or keep or have in his possession in any public or private place in the city of Wichita any 'punch board' or 'slot machine' or other gambling device, devised or designed for the purpose of playing any game of chance for money or property, including 'punch boards,' 'slot machines' or any other gambling device wherein money or goods are received with every punch board, but the amount to be paid depends upon the number punched, played or drawn, or where a capital prize or any additional prize may be received or where tokens are received, or any person who shall induce, entice or permit any person to bet or wager or pay money upon any such 'punch board,' 'slot machine' or any other gambling device or devices as above described, shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine not less than one hundred dollars ($100) nor more than three hundred dollars ($300) or by imprisonment in the city jail for not less than thirty days nor more than one year, or by both such fine and imprisonment."

"SECTION 34. *Confiscation of Gambling Devices.* Upon conviction of any person or persons under the provisions of the immediately foregoing sections 3, 4 and 6, the police judge shall, as a part of his judgment, order the destruc-

tion of all such 'punch boards,' 'slot machines' or other gambling devices or material used by or in the possession of the defendant, and the chief of police of the city of Wichita shall execute such judgment by publicly destroying or causing to be destroyed such 'punch boards,' 'slot machines' or other gambling device or equipment by burning or otherwise, which destruction shall take place after said devices are no longer needed as evidence."

It will be noted that section 3 makes it a violation to have "in his possession in any . . . private place . . . any . . . slot machine . . . designed for the purpose of playing any game of chance," and provides that this misdemeanor shall be punishable by a fine or imprisonment or both, while section 34 provides in addition to the fine and imprisonment that upon the conviction of any person for a violation of section 3 the police judge shall as a part of his judgment order the destruction of such slot machine.

The plaintiff first argues that the ordinance is invalid because the city had no statutory authority to enact an ordinance prohibiting mere possession of a slot machine. Plaintiff first cites the case of *Smith v. Hosford*, 106 Kan. 363, 187 Pac. 685, where this court held:

"A municipal corporation has no inherent power to enact police regulations, but such authority must be expressly granted or clearly implied." (Syl. ¶ 1.)

Plaintiff refers to G. S. 1935, 13-401, 13-423, 13-424, 13-430; also, G. S. 1935, 21-922, 21-918 and 21-915, all being statutes conferring authority on cities to enact ordinances with reference to gambling devices and general police power, and argues that since these statutes do not by express terms confer on cities the authority to make possession of a slot machine a crime, the cities do not have such authority.

This general subject has received the attention of this court heretofore.

G. S. 1935, 13-401, provides as follows:

"The governing body shall have the care, management and control of the city and its property and finances; and shall have power to enact ordinances for all the purposes named and provided for in this article not repugnant to the constitution and laws of this state, and to alter, amend, modify and repeal such ordinances."

One of the purposes mentioned in section 13-401 is stated in G. S. 1935, 13-423. That section provides as follows:

"To make all needful police regulations necessary for the preservation of good order and the peace of the city, and to prevent injury to or the destruction of or interference with public or private property."

Also, G. S. 1935, 13-430. That section reads as follows:

"To prohibit and suppress . . . to restrain, . . . games and gambling houses, . . . and to provide for the punishment thereof."

It should be noted that the above statutes all confer authority on cities of the first class.

G. S. 1935, 21-922, confers authority on all cities, whether they be first, second or third class. That section provides as follows:

"Cities of the first, second and third class may provide by ordinance for the suppression of common nuisances as hereinbefore defined, and for the search of premises where such nuisances are kept or maintained, and for the seizure and destruction of all gaming tables, gambling devices and other property used or kept in maintaining such nuisances, and for the payment and collection of attorney's fees in such cases."

G. S. 1935, 21-918, provides for the abatement of nuisances, and reads, in part, as follows:

"All places used for any of the unlawful purposes as mentioned in Laws 1895, chapter 151, section 1 [21-915], are hereby declared to be common nuisances, . . ."

And further provides for the abatement of them as follows:

". . . taking possession of all devices and all other property used in keeping and maintaining such nuisance, and such personal property so taken shall be forthwith publicly destroyed by such officer."

G. S. 1935, 21-915, provides as follows:

"Every person who shall set up or keep any table or gambling device . . . or any kind of gambling table or gambling device, . . . or shall keep a place or room to be used as a place for playing any game of cards for money or property, or keep a common gaming house, or keep a house, room or place to which persons are accustomed to resort for the purpose of gambling, shall on conviction be adjudged guilty of a felony, and punished by imprisonment and hard labor for a term not less than one year nor more than five years."

Plaintiff argues that the general authority given cities of the first class in chapter 13 must yield to the specific authority given all cities in chapter 21 with reference to gambling. He then argues that these statutes confer authority to suppress nuisances, as defined therein, that all places used for any of the unlawful purposes mentioned in G. S. 1935, 21-915, are made nuisances and that G. S. 1935, 21-915, makes places where gambling devices are set up or kept nuisances; that the mere having of gambling devices in one's possession is not setting them up or keeping them—hence, G. S. 1935, 21-922, does not confer authority on cities to make possession of gambling devices a nuisance.

Our question then is whether the city has authority to make an act a nuisance that is not made a nuisance by statute.

In *City of Kansas City v. Grubel*, 57 Kan. 436, 46 Pac. 714, the city ordinance provided that it should be unlawful to keep open a store after ten o'clock a. m. on Sunday. The statute forbids keeping a store open at all on Sunday. When the defendant was charged with a violation of the ordinance he contended it was bad because it did not go as far as the state statute. The court held that the ordinance was good, even though it did not go as far as the statute.

In *Monroe v. City of Lawrence*, 44 Kan. 607, 24 Pac. 1113, the city ordinance forbade the sale of cider in less quantities than a gallon. One charged with a violation of the ordinance argued that it was invalid because the legislature had not conferred on the city the power to enact such an ordinance. This court held that the authority to enact ordinances for the general welfare conveyed authority to enact the ordinance in question. This court said:

"The ordinance under consideration is not repugnant to the constitution or laws of the state; and, as we have seen, the regulation of the same is neither unreasonable nor unjust. Every statute of the state shows the solicitude of the law to protect the health and morals of the people, and preserve the peace and good order of the communities, and it is manifest that the legislature intended that ample authority should be conferred either by express grant or by virtue of the general powers to carry out this purpose. Instead of specifically defining every regulation which might be necessary to the health, safety, peace and convenience of the public, the legislature enacted the general-welfare clause; and it seems to us that it furnishes sufficient authority for the council to pass an ordinance so clearly in the interest of peace, good order and health as the one in question." (p. 610.)

In the case of *Kansas City v. Henre*, 96 Kan. 794, 153 Pac. 548, we have a situation where the statutes and the city ordinance had operated in the same field. In that case the ordinance provided that no milk should be kept for sale that contained less than twelve percent of milk solids or less than three and one-fourth percent butterfat. A regulation of the state board of health, which had the force of a statute, provided that no milk should be offered for sale that contained less than eight and one-half percent of solids and less than three and one-fourth percent of butterfat. The penalty for a violation of this regulation was a $50 fine or six months imprisonment, or both; for violation of the ordinance not less than $10 fine nor more than $100, and for any subsequent offense a fine of not less than $50 nor more than $500. It will thus be seen that the standards set by the ordinance were higher than those set by

the regulation, and the punishment was greater as to the fine that could be imposed. When Henre was charged with a violation of the ordinance he contended that it was invalid on the ground that it was in excess of the power granted to the city and that it conflicted with a state regulation on the same subject. This court held that the power of the city in respect to such matters was derived from the state and was only such as was clearly conferred by statute; that the legislature, among other powers, had given cities the authority to enact ordinances for the purpose of securing the public health of the city; and that the ordinance regulating the sale of milk came clearly within the power so conferred, and unless it conflicted with the statutes or constitution of the state it was valid. This court then said:

"It is well settled in this state that where power is conferred upon cities to enact ordinances for the preservation of peace and good order within the city or for the preservation of the health of its inhabitants it may be exercised although the legislature has provided state regulations on the same subject." (p. 796.)

This court further said:

"An ordinance enacted in the exercise of the police power is not necessarily inconsistent with a state law on the same subject because the city provides for greater restrictions or makes higher standards than is provided or made by the statute. . . . Nor is an ordinance repugnant to a statute merely because the penalty prescribed is greater than is fixed by the statute for the commission of a like offense." (p. 797.)

See, also, *Walker v. Railway Co.*, 95 Kan. 702, 149 Pac. 677.

In *Garden City v. Legg*, 126 Kan. 569, 268 Pac. 827, an ordinance made drunkenness in any place, public or private, an offense. The statute (R. S. 1923, 21-2128) is, in part, as follows:

"If any person shall be drunk in any highway, street, or in any public place or building, or if any person shall be drunk in his own house, or any private building or place, disturbing his family, or others, he shall be deemed guilty of a misdemeanor."

It will be noted that this statute does not make it an offense to be drunk in a private place unless the person charged was also disturbing the peace. The defendant was charged with being drunk in a private place. He contended that the ordinance was invalid because it was repugnant to the statute quoted above and exceeded the police power of the city. This court cited first the rule laid down in 43 C. J. 215 *et seq.*, as follows:

"Since a municipal corporation is a creature of the state, continuing its

existence under the sovereign will and pleasure of the state, possessing such powers· and such only as the state confers upon it, subject to addition or diminution of power at the state's supreme discretion, municipal regulations must not directly or indirectly contravene the general law, nor can such regulations be repugnant to the policy of the state as declared in general legislation. . . . Ordinances which assume directly or indirectly to permit acts or occupations which the state prohibits, or to prohibit acts permitted by the state, are uniformly declared to be null and void. . . . The question as·to whether or not a municipal ordinance or regulation is in conflict with the general law is sometimes difficult of solution, and cannot be determined by any fixed rule. Each particular case must be determined as it arises. Broadly speaking, the question whether a conflict exists depends upon whether the state has occupied the whole field of prohibitory legislation with respect to the subject. If such is the case it is held that a conflict exists. In order that there be a conflict between a state enactment and a municipal regulation both must contain either express or implied conditions which are inconsistent and irreconcilable with each other. Mere differences in detail do not render them conflicting. If either is silent where the other speaks there can be no conflict between them, Where no conflict exists, both laws stand. . . . As a general rule, additional regulation to that of the state law does not constitute a conflict therewith."

Applying the rules laid down in these cases and in the above quotation we find, first, that it is the policy of this state to do everything possible to suppress gambling. This court will take judicial notice of the fact that gambling is permitted to flourish to a greater extent in the cities than elsewhere, and that the devices known·as slot machines are the most often used of any of the devices. They give the law enforcement officers more trouble because they can be moved readily, take no trouble to set up, and are easily used, and in most cases can be played with a nickel, so they are within the means of practically any of our people. The fact that the legislature made places where gambling devices are set up nuisances did not prohibit the cities from going further and making their possession an offense. The statute just did not go as far as the ordinance did, that is all. The reasoning in the case of *City of Kansas City v. Henre*, supra, is in point here. As stated in 43 C. J., 215 *et seq.*, supra, the question is whether the state has occupied the whole field of prohibitory legislation. Here it has not, because the legislature has never made possession of gambling devices an offense. Certainly, however, the legislature has never said that the city could not enact such an ordinance, nor has the legislature ever said it was lawful to have gambling devices in one's possession. G. S. 1935, 13-423, confers authority on the city to enact the ordinance in question.

The plaintiff next argues that even if bare possession can be made an offense the city cannot enforce such an ordinance by confiscating the devices. He points out that there is no express statute other than G. S. 1935, 21-922, which has already been considered, conferring power on cities to provide for the confiscation of gambling devices.

The city did not need express authority to provide for the confiscation of the machines. We have just seen that the city had authority to make the possession of the machines an offense. There was no lawful use to which they could be put in that city. While the possession of them might not be an offense in other cities, the moment anyone started using one of them he would be violating the law. The practice of operating these machines is well known. One man owns a number of them and leases these to people who are operating lunch counters, pool halls, cigar stores and like places. For a while they are permitted to operate unmolested, then the attention of the law enforcement officers is drawn to the fact that a number of slot machines are operating. A campaign is started against them, one or two are seized while in operation, and the rest are gathered up in about an hour, and taken out of circulation for a while. We do not say, of course, that the above happened here. What we do say is that it is the general practice, and the ordinance we are considering was designed to stop it. Slot machines are instruments by which the law is violated. They serve no lawful purpose. Every law enforcement officer's hand is against them and no lawful right of the plaintiff will be violated when these machines are destroyed. This is the idea this court had in mind when in *Monroe v. City of Lawrence,* supra, we said, in speaking of the ordinance, that made it an offense to sell cider in less quantities than one gallon:

"The juice of apples quickly changes from fresh to hard cider, and hard cider is presumptively not only a fermented but an intoxicating liquor. (*State v. Schaefer,* ante, p. 90; same case, 24 Pac. Rep. 92.) It is difficult to show when the change occurs, and when it reaches such a stage as will produce intoxication. It may have been thought that the drinking of cider might foster a taste for strong liquors, and that if the unrestricted sale of cider by the glass was permitted, the officers might be easily deceived as to the character of the drinks sold, and that a tippling shop might be carried on under the guise of a place to sell cider. In the interest of the health of the people, and the peace and good order of the community, it was deemed wise to regulate the traffic. To sell it by the glass, and allow it to be drunk upon the premises where sold, was deemed to be subversive of good order, and dangerous

to the health and morals of the people, and hence the city imposed a regula-tion that it should not be sold in less quantities than one gallon, and should not be drunk at the place of sale. Such a regulation violates no private right, and does not unreasonably or improperly restrain trade." (p. 609.)

G. S. 1935, 13-430, uses the word "suppress" as well as "prohibit," when speaking of gambling. We know of no better way to suppress gambling than to destroy the instrumentalities by which gambling is carried on wherever they may be found.

Plaintiff next argues that as applied to this case the ordinance is unreasonable. What has been said here is an answer to that argument.

There is a further reason why judgment in this action could not be for the plaintiff. The statute providing for replevin actions is G. S. 1935, 60-1002. That section provides, in part, as follows:

". . . That it was not taken in execution on any order or judgment against said plaintiff, or for the payment of any tax, fine or amercement assessed against him, or by virtue of an order of delivery issued under this article, or any other mesne or final process issued against said plaintiff."

This statute was considered by this court in *Karr v. Stahl*, 75 Kan. 387, 89 Pac. 669. In that case the chief of police of Topeka had seized certain property under a warrant duly issued under the provisions of an ordinance which had been declared by this court in another action to be void. A replevin action was brought by the defendant in the action in police court to recover the property. The plaintiff in the replevin action argued that the ordinance being void, it conferred no rights, and the complaint, warrant and all proceedings had thereunder were without force or effect. This court referred to the statute just quoted, and quoted from the opinion of this court in *Westenberger v. Wheaton*, 8 Kan. 169, as follows:

"All these facts must be sworn to exist before the order of delivery can be made; a fortiori they must exist as facts. But the clause does not confine the facts to a valid judgment. A valid judgment cannot be successfully contested in any way except by proceedings to set it aside. So that the object of this clause of the section is not solely to protect the process of the court when issued on a valid judgment. The object of the clause, as drawn from its language, and from other parts of the section, as well as from the history of the action known as replevin, is to compel a party who desires to contest the validity of any judgment or order of a court, or any tax, fine, or amercement, or any other mesne or final process, so to do in some other way than by seizing property already in the custody of the law. An order of attachment is most frequently issued by the clerk under the law. If improvidently issued, and property is seized, the remedy is not tolerated of taking it out of the possession of the law, and by such a proceeding trying the validity of the order, or

writ. A safer and more reasonable remedy exists. . . . The wisdom of our code on this subject, as we construe it, is vindicated by the following observations, showing the utter confusion that would result from the code if the construction should be given to it claimed by the plaintiff in error: 'If a defendant in the execution, after judgment had been ·legally entered against him upon a full and fair trial, were tolerated in bringing his action of replevin, and by it to replevy the goods taken in execution, there might be no end to the delays which the defendant might thus create. Justice and the end of the law would be effectually subdued, for although the defendant in the execution and plaintiff in the action of replevin would fail upon the trial, and judgment would be rendered in favor of the officer for the restoration of the property, yet the action might be again and again renewed, and delay without end effected. To prevent such abuses, and such contempts of the authority of courts, to prevent the monstrous absurdity of rendering the remedies afforded by law with a view to redress wrongs, the means of defeating the very end to be accomplished, the defendant in an execution, who should thus pervert the action of replevin, might and ought to be severely punished for contempt.'" (pp. 176, 178.)

This court then said, in *Karr v. Stahl:*

"The same reason urged against the use of the writ of replevin for the purpose of testing the validity of judgments or process when they are voidable only seems to apply where they are void. As illustrated by this case, the ordinance in question had been in force and' acted upon for a long time as valid. The writ in question was duly issued in appropriate proceedings had under the ordinance. The officer was bound either to obey the writ or review the proceedings of the mayor and council of the city who had enacted the ordinance and the action of the police court issuing the writ, and at his peril decide the legality of the ordinance for himself. Such a rule would leave the validity of writs open to question to such an extent as, in a large measure, to defeat the object of the statute. We think the orderly administration of the law will· be better subserved if full effect be given to the language of the statute, by holding that the words 'any order or judgment, . . . any tax, fine or amercement . . . or any other mesne or final process' (Gen. Stat. 1901, sec. 4611) were used advisedly and in their ordinary meaning, and not in the limited sense which results from the interpolation of the word 'valid' after the word 'any'—an interpretation that would destroy the manifest intent of the law and materially weaken its efficacy. Ample remedy has been given for testing the validity of any law, process or judgment without recourse to an action of replevin." (p. 389.)

The same argument as to why a writ of replevin should not be allowed is good in this case as it was in *Karr v. Stahl,* supra. All questions raised by the action in this case could be raised in the action in police court against .the plaintiff here. This action has been appealed to the district court and will eventually come on for trial, and if the defendant is convicted he may appeal to this court. Our beloved Chief Justice Johnston had a homely expression for ac-

tions of this type. He said: "It is not a good idea for this court to take two bites at a cherry." That states the situation about as well as it can be stated. We are aware that all the parties in the court below wished the action tried and determined in that court on the question of the validity of the statute. We have decided that question in this case. We do not wish this action, however, to be taken as an approval of the practice of bringing replevin actions when the property sought to be recovered has been taken as this property was taken. The holding of the court in *Allison v. Hern*, 102 Kan. 48, 169 Pac. 187, is to the same effect as *Karr v. Stahl*, supra. (See, also, *Greentree v. Wallace*, 77 Kan. 149, 93 Pac. 598; also, *Hines v Stahl*, 79 Kan. 88, 99 Pac. 273.) A better consideration can be given the question involved when this court has a record before it which shows all the surrounding facts and circumstances.

The reason given by the trial court in this action for giving judgment to the defendants was not the one that has just been discussed. However, this court quite often affirms a judgment for a reason other than given by the trial court. (See *Yehle v. Stamey-Tidd Const. Co.*, 150 Kan. 440, 94 P. 2d 328; also, *In re Estate of Dennis*, 146 Kan. 121, 68 P. 2d 1083.) The matter just discussed is an additional reason why the judgment of the trial court was correct.

The judgment of the trial court is affirmed.