THIS IS A PRELIMINARY RESEARCH MEMORANDUM AND IS NOT AN OFFICIAL OPINION OF THE ATTORNEY GENERAL.
YOU HAVE ASKED WHETHER A PAWNBROKER LICENSE IS REQUIRED FOR A BANK WHICH TAKES POSSESSION OF PERSONAL PROPERTY AS SECURITY FOR A LOAN. IN THE SITUATION YOU RELATED, A STATE BANK MADE A LOAN, TAKING A PIECE OF JEWELRY AS SECURITY. THE CUSTOMER SIGNED A NOTE AND THE BANK PERFECTED ITS SECURITY INTEREST NOT ONLY BY FILING A UCC-L STATEMENT, BUT ALSO BY TAKING POSSESSION OF THE JEWELRY. THEREAFTER, THE BANK WAS DECLARED INSOLVENT AND THE FDIC "STEPPED INTO THE SHOES OF THE BANK."
THE UNDERLYING QUESTION IS WHETHER TRANSACTIONS OF THIS TYPE BETWEEN A BANK AND ITS CUSTOMERS CONSTITUTE A PAWN TRANSACTION WITHIN THE MEANING OF THE OKLAHOMA PAWNSHOP ACT ("ACT) 59 O.S. 1501 (1981), ET SEQ. TO RESOLVE THIS ISSUE, WE MUST CONSTRUE THE ACT BY APPLYING CERTAIN COMMONLY ACCEPTED RULES OF STATUTORY CONSTRUCTION. THE WELL-KNOWN AND CARDINAL RULE IS ASCERTAINMENT OF LEGISLATIVE INTENT. JACKSON V. INDEPENDENT SCHOOL DISTRICT NO. 16, 648 P. 2D 26, 29 (OKL. 1982). LEGISLATIVE INTENT IS DERIVED FROM A PLAIN READING OF THE ENTIRE LEGISLATIVE ACT UNDER CONSIDERATION, TOGETHER WITH ALL OTHER LEGISLATIVE ENACTMENTS UPON THE SAME SUBJECT, AS WELL AS THE GENERAL PURPOSE AND REASONS WHICH PROMPTED THE LEGISLATION. MIDWEST CITY V. HARRIS 561 P.2D 1357 (OKL. 1977).
IN 1972, THE LEGISLATURE PASSED THE ACT, WHICH PROVIDES THAT NO PERSON SHALL ENGAGE IN BUSINESS AS A PAWNBROKER UNLESS LICENSED BY THE ADMINISTRATOR. 59 O.S. 1503 (1981).
UNDER THE ACT, A PAWNBROKER IS A PERSON ENGAGED IN THE BUSINESS OF MAKING PAWN TRANSACTIONS (59 O.S. 1502(4)), AND A PAWN TRANSACTION IS THE ACT OF LENDING MONEY ON THE SECURITY OF PLEDGED GOODS OR THE ACT OF PURCHASING TANGIBLE PERSONAL PROPERTY ON CONDITION THAT IT MAY BE REDEEMED OR REPURCHASED BY THE SELLER FOR A FIXED PRICE WITHIN A FIXED PERIOD OF TIME (59 O.S. 1502(6)).
AS TO LEGISLATIVE PURPOSE, COURTS IN OTHER STATES HAVE IDENTIFIED THE NEVILS TO BE AVOIDED BY PAWNSHOP REGULATION. SPECIFICALLY, THE PAWN TRANSACTION — WITHOUT STRICT REGULATION — PROVIDES THE OPPORTUNITY FOR COMMISSION OF CRIME AND CONCEALMENT OF STOLEN PROPERTY. SEE MEDIAS V. CITY OF INDIANAPOLIS. 23 N.E. 2D 590, 594 (IND. 1939) (OVERRULED ON OTHER GROUNDS); SEE CITY OF WICHITA V. WALKOW, 202 P. 632, 633 (KS. 1921); SEE KIPPERMAN V. STATE, 626 S.W. 2D 507, 511 (CT. CRIM. APP. TX. 1981).
WE HAVE CONCLUDED THAT A LICENSE IS NOT REQUIRED FOR TWO REASONS.
FIRST, A PAWNBROKER IS SOMEONE WHO IS ENGAGED IN THE BUSINESS OF MAKING PAWN TRANSACTIONS. ALTHOUGH THE ACT HAS NO DEFINITION OF THIS PHRASE, THE OKLAHOMA SUPREME COURT, IN CONSTRUING THE SECURITIES ACT, SAID: "WHILE THE PHRASE `ENGAGED IN THE BUSINESS' WAS NOT SPECIFICALLY DEFINED BY THE LEGISLATURE, THE TERM HAS A LONG ESTABLISHED JUDICIAL MEANING THAT MUST HAVE BEEN CONTEMPLATED BY THE LEGISLATURE IN ENACTING THE STATUTE ON WHICH PIC RELIES." AS WE STATED IN WILSON V. FEDERAL TAX CO., STATUTORY PHRASES SUCH AS "ENGAGING IN THE BUSINESS" MEAN:
 "(D) OING OR PERFORMING A SERIES OF ACTS WHICH OCCUPIES THE TIME, ATTENTION, AND LABOR OF PERSONS FOR THE PURPOSE OF LIVELIHOOD, PROFIT OR PLEASURE, BUT THE DOING OF A SINGLE ACT PERTAINING TO ONE PARTICULAR BUSINESS WILL NOT BE CONSIDERED CARRYING ON TRANSACTING OR DOING BUSINESS AS CONTEMPLATED IN THE STATUTES."
PIC OIL COM ANY INC. V. GRISHAM, 702 P. 2D 28, 30 (01, 1985).
THEREFORE, BECAUSE THE BANKS ARE NOT "ENGAGED IN THE BUSINESS," THEY ARE NOT PAWNBROKERS WITHIN THE STATUTORY MEANING.
SECOND, THIS TRANSACTION IS NOT THE TYPE OF TRANSACTION WHICH THE LEGISLATURE INTENDED TO BE REGULATED UNDER THE ACT. RATHER, THE LEGISLATURE INTENDED TO REGULATE TRADITIONAL PAWN TRANSACTIONS. ONE COURT HAS DEFINED THE TRANSACTIONS THUS:
 IN A TYPICAL PAWNBROKING LOAN, THE PAWNBROKER LENDS MONEY TO HIS CUSTOMER IN RETURN FOR A PLEDGE OF PERSONAL PROPERTY. THE CUSTOMER CAN RECLAIM THE PLEDGED PROPERTY BY REPAYING THE PRINCIPAL OF THE LOAN WITH INTEREST. THE PAWNBROKER MAY SELL THE PROPERTY TO THE GENERAL PUBLIC IF THE CUSTOMER DOES NOT REPAY THE LOAN WITHIN A PREDETERMINED PERIOD OF TIME.
RHODES V. HARTFORD, 513 A.2D 124, 128 (CONN. 1986)
CONVERSELY, IN TRANSACTIONS OF THE TYPE ABOUT WHICH YOU INQUIRE, THE CUSTOMER IS PERSONALLY OBLIGATED ON A NOTE WHICH THE BANK COLLATERALIZES BY TAKING A SECURITY INTEREST IN PERSONALTY. THE BANK MAY NOT SELL THE PROPERTY WITHOUT SUING ON THE NOTE AND FOLLOWING PROPER STATUTORY PROCEDURES. 12A O.S. 9-504 (1981), ET SEQ. PAWNBROKERS, UNLIKE BANKS, ARE SPECIFICALLY PROHIBITED FROM MAKING AN AGREEMENT REQUIRING THE PERSONAL LIABILITY OF A CUSTOMER IN CONNECTION WITH A PAWN TRANSACTION. 59 O.S. 1511(B) (1981).
THEREFORE, IT IS MY INFORMAL OPINION THAT THE TRANSACTION UNDER CONSIDERATION IS NOT A PAWN TRANSACTION AS DEFINED BY THE ACT, AND THAT BANKS ARE NOT REQUIRED TO OBTAIN A LICENSE UNDER THE ACT. WE ALSO NOTE THAT THE TE AS ATTORNEY GENERAL HAS RULED THAT BANKS WHICH, UNDER NORMAL BANKING PRACTICES, TAKE PHYSICAL POSSESSION OF TANGIBLE PERSONAL PROPERTY AS COLLATERAL FOR LOANS, ARE NOT REQUIRED TO OBTAIN A PAWNBROKER'S LICENSE. A.G. OPIN. NO. H-131 (TX.1978).
(JANE F. WHEELER)